STATE OF SOUTH CAROLINA

IN THE SUPREME COURT

———————————

Appeal from Colleton County

Perry M. Buckner, Circuit Court Judge

———————————

ANTHONY LAMAR BROWN,

PETITIONER,

V.

STATE OF SOUTH CAROLINA,

RESPONDENT

———————————

A P P E N D I X

———————————

| | |
|---|---|
| ROBERT M. DUDEK<br>Chief Appellate Defender | ALAN WILSON<br>Attorney General |
| South Carolina Commission on Indigent Defense<br>Division of Appellate Defense<br>PO Box 11589<br>Columbia, SC 29211-1589 | JOHN W. MCINTOSH<br>Chief Deputy Attorney General<br><br>SALLEY W. ELLIOTT<br>Assistant Deputy Attorney General |
| ATTORNEY FOR PETITIONER | MATTHEW J. FRIEDMAN<br>Assistant Attorney General<br><br>P. O. Box 11549<br>Columbia, SC 29211<br><br>ATTORNEYS FOR RESPONDENT |

i

# INDEX

INDEX ........................................................................................................................i

GUILTY PLEA TRANSCRIPT, DATED MARCH 13, 2007 .........................................1

APPLICATION FOR POST-CONVICTION RELIEF ..................................................26

MOTION TO COMPEL ORDER GRANTING OR DENYING MOTION....................30

RETURN .................................................................................................................32

POST-CONVICTION RELIEF HEARING TRANSCRIPT,
    DATED SEPTEMBER 3, 2010 ...........................................................................38

ORDER OF DISMISSAL .........................................................................................76

MOTION TO ALTER OR AMEND ..........................................................................84

AMENDED ORDER OF DISMISSAL.......................................................................86

ARREST WARRANTS .............................................................................................88

INDICTMENTS ......................................................................................................90

COLLETON COUNTY COURT OF GENERAL SESSIONS JURY SHEET ................94

734 4113

03:58:02 p.m.    11-16-2011    4/34

STATE OF SOUTH CAROLINA          )   COURT OF GENERAL SESSIONS
                                 )   FOURTEENTH JUDICIAL CIRCUIT
COUNTY OF COLLETON               )

STATE OF SOUTH CAROLINA          )
                                 )
VS.                              )   Indictment No.:
                                 )   2004-GS-15-0420/0421
ANTHONY L. BROWN,                )
                                 )
     DEFENDANT.                  )
                                 )

**PLEA**

held before the Honorable Carmen T. Mullen

Mia Perron, Official Court Reporter, 14th Judicial Circuit

in the Colleton County Courthouse

Walterboro, South Carolina

on Tuesday, March 13, 2007, Commencing at 9:57 a.m.

**SUSAN "MIA" PERRON, CCR, CVR-CM**
*Circuit Court Reporter - 14th Judicial Circuit*
**Post Office Box 2865**
**Bluffton, South Carolina 29910**
**1-706-231-6028**

2    7344113

APPEARANCES OF COUNSEL

FOR THE STATE:          Terry K. Alexander, Esquire
                        14th Circuit Solicitor's Office
                        Post Office Box 620
                        Walterboro, South Carolina  29488


FOR THE DEFENDANT:      Kenneth L. Tootle, Esquire
                        Attorney at Law
                        Post Office Box 1321
                        Beaufort, South Carolina  29901

MIA PERRON, CCR, CVR-CM                                    -2-

INDEX TO PROCEEDINGS

STATE V. ANTHONY L. BROWN

|                              | PAGE |
|------------------------------|------|
| PROCEEDINGS                  | 4    |
| CERTIFICATE OF COURT REPORTER | 25   |

- - - - -

EXHIBITS

[None]

4   734 4113

State v. Anthony L. Brown
Plea
3/13/07

                        PROCEEDINGS

1

2       THE COURT:  Solicitor.

3       MR. ALEXANDER:  Please the Court.  Your Honor, I

4   have been informed that the defendant, Anthony Lamar

5   Brown, wishes to change his plea from not guilty to

6   guilty.  I've handed up the sentencing sheets.  He is

7   present, along with his attorney, Ken Tootle.

8       THE COURT:  All right.  Please have Mr. Brown

9   come forward.

10      Mr. Tootle, have you explained, and does Mr.

11  Brown understand, the charges against him, the possible

12  punishment, and his constitutional rights?

13      MR. TOOTLE:  Your Honor, we've explained those

14  in detail, and he does understand.

15      THE COURT:  Thank you, sir.  Does Mr. Brown wish

16  to plead guilty to the murder charge and armed robbery

17  charge, sir?

18      MR. TOOTLE:  Yes, Your Honor, he does.

19      THE COURT:  Is that correct, Mr. Brown?

20      MR. BROWN:  Yes, ma'am.

21      THE COURT:  All right.  Sir, based on your

22  investigation, Mr. Tootle, does the State have adequate

23  evidence to prove his guilt on these two charges beyond

24  a reasonable doubt, sir?

25      MR. TOOTLE:  I believe the State does possess

NIA PERRON, CCR, CVR-CM                          -4-

State v. Anthony L. Brown
Plea
3/13/07

1        that evidence, Your Honor.

2                THE COURT:  Mr. Brown, how old are you, sir?

3                MR. BROWN:  Twenty-five.

4                THE COURT:  How far did you go in school?

5                MR. BROWN:  Graduated.

6                THE COURT:  High school?

7                MR. BROWN:  Yes, ma'am.

8                THE COURT:  What type of work do you do, sir?

9                MR. BROWN:  The last work I did was concrete,

10       before I came in.

11               THE COURT:  All right.  Sir, are you married?

12               MR. BROWN:  Single.

13               THE COURT:  Do you have any children?

14               MR. BROWN:  None.

15               THE COURT:  All right.  Sir, have you taken any

16       medication or drank any alcohol in the last twenty-four

17       hours?

18               MR. BROWN:  No.

19               THE COURT:  Do you suffer from any mental or

20       physical infirmity that would prevent you from

21       understanding what we are doing here today?

22               MR. BROWN:  No.

23               THE COURT:  All right.  Sir, the first

24       indictment is for armed robbery.  It is indictment

25       number 2004-GS-15-421.  This indictment states that you

MIA PERRON, CCP, CVR-CM                                    -5-

6    734 4113

State v. Anthony L. Brown
Plea
3. 13/07

1    did in Colleton County on or about April 13th of 2004,

2    while armed with a deadly weapon, a handgun, take from

3    the person or presence of the victim, a Ms. Carolyn

4    Maloney, by means of force or intimidation, goods or

5    monies belonging to Ms. Maloney, and it's described in

6    the indictment as a purse, a bank bag, and a diaper

7    bag, sir.  Do you understand the charge contained in

8    the indictment?

9        MR. BROWN:  Yes, I do.

10        THE COURT:  How do you wish to plead to it, sir?

11        MR. BROWN:  Guilty.

12        THE COURT:  Sir, are you pleading guilty to this

13    charge because you are, in fact, guilty?

14        MR. BROWN:  [No response]

15        MR. ALEXANDER:  Your Honor, excuse me.  I failed

16    -- this is negotiated for a forty-year sentence on the

17    murder charge and thirty years concurrent on the armed

18    robbery.  We've indicated that on the plea sheet, but I

19    failed to mention it when I called it.

20        THE COURT:  That's all right.

21        Mr. Brown, let me just explain that to you.

22    Because it is a negotiated sentence between the

23    solicitor's office and your attorney, I have no choice

24    to either -- I can only accept it or reject it.  In

25    other words, I can't give you any other sentence than

MIA PEPPIN, CCR. TYP-CH                              -6-

State v. Anthony L. Brown
Plea
3/13/07

1   what your two -- the solicitor's office and your

2   attorney have negotiated this to.  So, sir, if for any

3   reason I hear the facts of this case, if I decide for

4   some reason I can't follow the negotiation, I will tell

5   your attorney and I will allow you to withdraw the

6   plea.  Okay, sir?  Do you understand that?

7        MR. BROWN:  Yes, ma'am.

8        THE COURT:  All right, sir.  Sir, the second

9   indictment is indictment number 2004-GS-15-420.  It is

10  a charge for murder.  This indictment states that you

11  did in Colleton County on or about April 13th of 2004

12  feloniously, willfully, and with malice aforethought

13  kill Ms. Carolyn Maloney by means of shooting her and

14  that she did, in fact, die in Colleton County as a

15  proximate result of that gunshot on the 13th day of

16  April, 2004.

17       Sir, do you understand the charge contained in

18  this indictment?

19       MR. BROWN:  Yes, I do.

20       THE COURT:  And how do you wish to plead to it,

21  sir?

22       MR. BROWN:  Guilty.

23       THE COURT:  And are you pleading guilty, sir, to

24  this charge because you are, in fact, guilty?

25       MR. BROWN:  Yes, ma'am.

MIA PERRON, CCR, TVR-CM                              -7-

8    7344113

03:58:57 p.m.    11-16-2011    11 /34

State v. Anthony L. Brown
Filed
3-13/07

1       THE COURT:  Mr. Brown, you need to understand

2       that while the solicitor's office has negotiated, as we

3       said, a forty-year sentence for the murder charge and a

4       thirty-year sentence for the armed robbery charge, the

5       two of them to run concurrent, which means at the same

6       time, that these possible charges could carry -- a

7       murder charge carries up to life, sir, as you well

8       know, and the armed robbery charge, sir, carries ten to

9       thirty years.  Do you understand that, sir?

10          MR. BROWN:  Yes, ma'am.

11          THE COURT:  Sir, additionally, these charges are

12      both deemed most serious and violent offenses.  What

13      that means, sir, is that if you are convicted of

14      another most serious offense, you will be looking at

15      life without parole.  Do you understand that, sir?

16          MR. BROWN:  Yes, ma'am.

17          THE COURT:  And understanding that, sir, do you

18      still wish to plead guilty?

19          MR. BROWN:  Yes, I do.

20          THE COURT:  Sir, additionally, when you plead

21      guilty, you give up important constitutional rights.

22      As you know, we started your trial yesterday, or we

23      pulled a jury in this case yesterday.  Sir, in a jury

24      trial, you have a right to remain silent.  No one can

25      ever make you testify against yourself.  If you chose

MIA PERRON, RCP, CVR-CM                                    -8-

State v. Anthony L. Brown
Plea
3/13/07

1     not to testify in a case, sir, I would instruct a jury

2     of twelve people they couldn't hold it against you.

3     Additionally, sir, at a jury trial you would be

4     presumed innocent until and unless a jury, in fact,

5     found you guilty.  And that is something that is a

6     cloak of innocence that would accompany you from the

7     beginning of the trial -- or actually it started from

8     the beginning of arraignment, through the process,

9     until and unless a jury convicted you.  Do you

10    understand that?

11         MR. BROWN:  Yes, ma'am.

12         THE COURT:  Sir, do you understand that at a

13    jury trial your attorney, Mr. Tootle, would have the

14    opportunity to cross-examine the State's witnesses, as

15    well as present witnesses in your defense?  Sir,

16    additionally, at a jury trial Mr. Tootle would have the

17    opportunity to attempt to suppress possible evidence.

18    It could be statements, it could be a murder weapon, it

19    could be anything, sir, and I don't know the specific

20    facts of your case to tell you whether or not he would

21    be successful.  But, sir, do you understand and

22    appreciate by not having a jury trial you are waiving

23    this right to have this evidence suppressed?

24         MR. BROWN:  Yes, ma'am.

25         THE COURT:  All right, sir.  And I want you to

MIA PERRON, CCP, CVR-CM                                    -3-

10 734 4113

State v. Anthony L. Brown
Plea
3-13/07

1    fully appreciate and understand that by pleading guilty

2    here today, you are not going to get a jury trial.  Do

3    you understand that?

4        MR. BROWN:  Yes, ma'am.

5        THE COURT:  All right, sir.  And do you

6    understand that you are going to have convictions on

7    your record for both murder and armed robbery?  Do you

8    understand that, sir?

9        MR. BROWN:  Yes, ma'am.

10        THE COURT:  All right, Mr. Brown.  And

11    understanding all that, sir, do you still wish to go

12    forward and plead guilty to these two charges?

13        MR. BROWN:  Yes, I do.

14        THE COURT:  All right.  Solicitor, other than

15    the plea negotiations that you've put on the record, is

16    there anything further, any other charges that are

17    being dismissed, or anything else that needs to be put

18    on the record?

19        MR. ALEXANDER:  No, Your Honor.

20        THE COURT:  Okay.  Is that correct, Mr. Tootle?

21        MR. TOOTLE:  That is correct.

22        THE COURT:  All right.  Sir, are you completely

23    satisfied with how Mr. Tootle has represented you?

24        MR. BROWN:  Yes, I am.

25        THE COURT:  Have you spoken to him for as long

MIA PEPPON, CCR, CVP-CM                                    -11-

State v. Anthony L. Brown
Plea
3/13/07

```
 1     and as often as is necessary to defend you in this

 2     matter?

 3            MR. BROWN:  Yes, ma'am.

 4            THE COURT:  Have you understood all your

 5     conversations with him?

 6            MR. BROWN:  Yes, I have.

 7            THE COURT:  Sir, do you need any additional time

 8     to talk with Mr. Tootle right now before I accept your

 9     plea and sentence you, sir?

10            MR. BROWN:  No, ma'am.

11            THE COURT:  Do you have any complaints

12     whatsoever against Mr. Tootle?

13            MR. BROWN:  No, ma'am.

14            THE COURT:  Sir, has anyone promised you

15     anything or held out any hope of reward to get you to

16     plead guilty?

17            MR. BROWN:  [Indicates negatively]

18            THE COURT:  Sir, has anyone pressured you,

19     threatened you, or told you you had to plead guilty

20     here today?

21            MR. BROWN:  No.

22            THE COURT:  Sir, has anyone mistreated you from

23     law enforcement or the solicitor's office regarding

24     these charges?

25            MR. BROWN:  No.
```

MIA PERRON, CCR, CVR-CM                                    -11-

12 734 4113

State v. Anthony L. Brown
Plea
3/13/07

1          THE COURT:  Sir, have you understood all of my

2     questions?

3          MR. BROWN:  Yes, I do.

4          THE COURT:  Mr. Brown, have you been truthful in

5     your responses to the Court?

6          MR. BROWN:  Yes, I have.

7          THE COURT:  Sir, you have the right to appeal

8     this guilty plea and any sentence this Court gives you,

9     but you must do so within ten days of today's date.  If

10    you can't afford an attorney for an appeal, one will be

11    appointed for you at no cost to you.  Do you understand

12    that, sir?

13         MR. BROWN:  Yes, ma'am.

14         THE COURT:  All right, sir.  I'm going to have

15    the solicitor give the facts of the case.

16         MR. ALEXANDER:  Please the Court.  Your Honor,

17    on April the 13th of 2004, a little before noon, Carol

18    Maple went to the office of Maloney Concrete, which is

19    located on the frontage road called ████ Road right

20    out at Exit 54.  It's right on the Interstate in

21    Colleton County.  She had gone by there that morning

22    and dropped her mother off and her two children.  She

23    had a twenty-month-old and a five-month-old, ████

24    [phonetic], who -- I've got the other child's name.

25    But the grandmother was watching them in the office of

MIA PERRON, CVR, TVR-CM                                    -13-

734 4113

State v. Anthony L. Brown
Plea
3/13/07

1    Maloney Concrete.

2        She was using her mother's car to run some

3    errands.  She left there.  Mr. Maloney had left home,

4    William Maloney, who owns the concrete company and is

5    married to Carolyn Maloney.  He had left home and gone

6    to Rose Oil and to Car Quest for some auto parts.  It

7    was raining that day, and they weren't working.  They

8    also had a funeral to go to that afternoon.

9        He went by the shop, saw his wife around 9:00,

10   9:30, and the grandchildren, and then he went on home

11   and was working on his truck.  He got a call from his

12   wife on his cell phone around 10:30, 10:00 to 10:30.

13   And the daughter called her mother regarding lunch

14   about 11:11 and received no answer at the concrete

15   company.  She went ahead and bought lunch and went to

16   the office, and when she came in the door she found her

17   mother slumped over in the chair where there was a

18   great deal of blood.  Her children were covered in

19   blood.  She called 911.  They gave her instructions

20   about how to administer CPR.  She was unable to move

21   her mother, and while she was doing this, fire and

22   rescue arrived, and law enforcement.  And the coroner's

23   office came, and she was pronounced dead.

24       She was autopsied by Dr. Presnell at MUSC, and

25   the cause of her death was a gunshot wound that entered

MIA PERRON, CCR, TVR-CM                                    -13-

14 7344113

State v. Anthony L. Brown
Plea
9/13/07

1    her right temple and exited below her left ear. A

2    bullet casing and the bullet projectile were recovered

3    at the scene, and analyzed by SLED, and determined to

4    be .380 caliber.

5        One of the things found at the scene by the SLED

6    forensic team were footprints along the roadway. And

7    they were of a small size. And known to local law

8    enforcement was an individual by the name of April

9    Hampton. April Hampton was contacted at her mother's

10   home and there, with the mother's consent, they

11   recovered a pair of Niki shoes that matched the pattern

12   in the road.

13       Initially, April Hampton denied any knowledge

14   of -- denied they were her shoes, claimed they were her

15   sister's, and denied any knowledge. Later she admitted

16   that they were her shoes and she had worn them that

17   day, and she began cooperating with law enforcement.

18   This was around April the 22nd. On April the 28th,

19   four individuals were under arrest: April Hampton; a

20   Ray Nelson; Anthony Terez Brown; and the defendant,

21   Anthony Lamar Brown.

22       Prior to exercising his right to counsel,

23   Anthony Terez Brown assisted police in recovering a

24   .380 pistol. This pistol was submitted to SLED, and

25   it, along with the casings -- casing and bullet

MIA PEPPIN, CCR, CVR-CM                          -14-

7344113

State v. Anthony L. Brown
Plea
3/13/07

1    projectile were analyzed by Agent Defreeze at SLED and

2    it was determined that that was the weapon that had

3    been utilized to shoot Ms. Maloney.  The story came out

4    that this weapon had been provided by Anthony Terez

5    Brown.  This was a stolen weapon, had been reported

6    stolen roughly a year earlier out of Mullins, South

7    Carolina.  We had an ATF report.  Anthony Terez Brown

8    said he purchased it on the street in Florence, and he

9    said that this is the gun that he provided to Anthony

10    Lamar Brown.

11         The four individuals:  Ray Nelson was the

12    driver.  He had a car, a Nissen Pulsar, which they

13    matched the tire treads on and all.  They went to the

14    concrete plant.  Originally it was said that Anthony

15    Lamar Brown, the defendant, also known as Banks, was

16    going to pick up a paycheck, that he had formerly

17    worked there.  He -- the two Browns, Anthony Terez

18    Brown and Anthony Lamar Brown, went into the office.

19    Punky, also known as April Hampton, was on the roadway

20    as a lookout, and Ray Nelson was in the car.

21         They went in.  Anthony Terez Brown exited with a

22    diaper bag and Ms. Maloney's purse.  Mr. Anthony Lamar

23    Brown exited with some type of money bag.  They rode

24    around.  Ultimately, the bag was disposed of in a drain

25    over near the stadium.  Ray Nelson was told to hide the

MIA PEPRON, CCR, CVR-CM                                    -19-

FORM C-100 LASER   REPORTERS PAPER & MFG. CO.  800-626-6313

16 7344113

State v. Anthony L. Brown
Plea

1    purse and the diaper bag, and it was done down in Green

2    Point [phonetic] area.  He assisted officers in

3    recovering that; and still had identifications of

4    Carolyn Maloney in it.

5        The other two defendants also indicated Anthony

6    Lamar Brown carried the murder weapon into the place of

7    business.  One of them indicated they heard the shot.

8    Anthony Terez Brown indicated he left first and he also

9    heard a shot.  This -- that was how far the case had

10   progressed up until about April the 28th.  Finally got

11   all the SLED information and all back.  And Ray Nelson

12   and April Hampton were cooperating.

13       Anthony Terez Brown exercised his rights of

14   counsel.  He had asked to talk with me way back then,

15   and when he exercised his right to counsel I ceased

16   conversation with him.  And then he went through a

17   series of lawyers.  And when he finally was represented

18   by Mr. James Wegman, who is present in court, Mr.

19   Wegman came to me.  There were some irregularities in

20   some of the things concerning Anthony Terez Brown, so

21   I'm -- for his truthful testimony, I agreed to allow

22   him to plead straight up to armed robbery and to

23   dismiss the murder charge.  So with that, I conversed

24   with him and he agreed to testify.  We were prepared to

25   utilize him in the trial of the case, and I'm prepared

KIA PEPPON, CCP, CVR-CM                                    -16-

1    to honor that plea agreement.

2         The only agreement with the other two defendants

3    was that I would give their consideration.  They were

4    still looking at the murder and armed robbery charges.

5    I've told their attorneys that I believe in treating

6    people as to their culpability.  And it is my honest

7    belief that these three other codefendants did not

8    realize that the life was going to be taken.  I've

9    emphasized to them what a dangerous adventure this was

10   because whenever you deal with this type of felony, the

11   law treats it as a logical consequence when death

12   ensues.

13        But because I've discussed all the pros and cons

14   with the family, Mr. Maloney, his daughter Carol, and

15   other members of the family are here, and I made them

16   aware of my offer for a negotiated sentence last week,

17   and they were in agreement.  I spoke specifically with

18   Mr. Maloney.  Then he contacted me and told me he had

19   talked with his children.  I believe this is the best

20   disposition of the case.

21        Mr. Brown has a juvenile conviction that I

22   didn't really take into consideration in the case.  But

23   other than that -- because I think he's only twenty-

24   something years old now.  That's all.

25        THE COURT:  Solicitor, do any of the victims

MIA PEPRON, CCP, CVR-CM                              -17-

18 <sup>7344113</sup>

State v. Anthony L. Brown
Plea
5.13-07

1    want to speak, sir, or the victim's family?

2        MR. ALEXANDER:  Anyone wish to address the

3    Court?  Any of the family.

4        THE COURT:  All right.

5        MR. ALEXANDER:  I mean, as I said to Mr.

6    Maloney, and I told the family, I did not want them to

7    think in any way that I was belittling the life of a

8    fifty-four-year-old mother and grandmother and wife.

9    And I just felt like it was -- I didn't want to have to

10   put the daughter back through what she observed, I

11   didn't want to have to put Mr. Maloney through -- he

12   suffered a lot, because when they started out, he was

13   treated as a suspect, and, you know -- and that upset

14   him.  And I've explained all of that, that law

15   enforcement was doing their job.  And I believe this is

16   the best resolution of the matter.

17       THE COURT:  All right.

18       MR. ALEXANDER:  Thank you, Your Honor.

19       THE COURT:  It's my understanding, Mr.

20   Alexander, the two children were not harmed; is that

21   correct?

22       MR. ALEXANDER:  Well, not physically harmed,

23   Your Honor.  I think we're still waiting to be seen how

24   they're doing mentally.  Right, Ms. Maple?

25       MS. MAPLE:  Right.

KIA PEARON, CCR, TVP-CM                              -13-

7344113

State v. Anthony L. Brown
Plea
3/13/07

1          THE COURT: And it's a twenty-month-old. And

2     what was the other age of the child?

3          MR. ALEXANDER: Five months.

4          MS. MAPLE: Almost four months.

5          MR. ALEXANDER: Almost four months. Excuse me.

6          THE COURT: Four months. Okay. An almost four

7     months, and twenty-month-old. But they physically were

8     not harmed in any way?

9          MR. ALEXANDER: No, ma'am. And that was the

10    concern. Because they had so much of the grandmother's

11    blood on them, the officers immediately got EMS and all

12    the -- you know, after they had checked Ms. Maloney and

13    she -- they ran an EKG there, it was flatline, and her

14    carotid and wrist pulse were checked by Lieutenant

15    Stallings [phonetic], and no pulse was found when they

16    arrived. And as I said, that was around 11:55 to noon.

17    And we feel like she was shot before 11:00.

18         THE COURT: All right. Thank you, solicitor.

19         Mr. Brown, sir, do you willingly admit that Ms.

20    Maloney was, in fact, killed; is that correct?

21         MR. BROWN: Yes, ma'am.

22         THE COURT: All right, sir. And y'all had gone

23    in there to steal money? Was that the purpose?

24         MR. BROWN: Yes, ma'am.

25         THE COURT: And, in fact, did you shoot her?

MIA PERRON, CCR, CVR-CM                              -19-

20 <sup>734 4113</sup>

04:00:58 p.m.    11-16-2011       23 /34

State v. Anthony L. Brown
Plea
3/13/07

1        MR. BROWN:  No, I didn't.

2        THE COURT:  Okay.  Did someone else that was

3  with you there shoot her?

4        MR. BROWN:  Yes, it was.

5        THE COURT:  Okay.  Who was that, sir?

6        MR. BROWN:  It was Terez Brown.

7        THE COURT:  Mr. Tootle, have you explained to

8  him the hand of one is the hand of all, and have y'all

9  discussed this?

10       MR. TOOTLE:  Yes, Your Honor, we've discussed

11  that.

12       THE COURT:  Okay.  Could I have both attorneys

13  come forward just for a moment, please.

14       [Whereupon, a bench conference is held]

15       THE COURT:  Mr. Tootle?

16       MR. TOOTLE:  Your Honor, I listened very

17  carefully to the solicitor's comments and they are, in

18  fact, one pretty accurate version of what occurred.  I

19  don't think there's any doubt that there was four

20  people that were involved in much more than mischief.

21  I don't think that there was any doubt that April

22  Hampton and Ray Nelson misunderstood what was happening

23  at all.  There is some significant evidence that shows

24  that April Hampton was instrumental in obtaining the

25  gun from Terez Brown; that actually there is some

State v. Anthony L. Brown
Plea
3/13/07

1   evidence that may lead to believe that there was more

2   than one gun involved, that there were actually two

3   guns involved.

4        Lamar Brown, my client, the defendant who is

5   pleading guilty, readily acknowledges that he went into

6   the cement company for the purpose of robbing that

7   company; that he did, in fact, have in his possession a

8   pistol with which to rob that company.  It's his story

9   that -- and his belief that Terez Brown likewise had a

10  pistol with him and that Terez Brown's pistol was the

11  one that was used by Terez Brown to kill Ms. Maloney.

12       I've been in this case for almost three years,

13  Judge, and through that time Lamar Brown and I have

14  discussed many, many, many times the concept that if

15  you have -- if you have more than one person involved

16  in a crime, that the hand of one is the hand of all;

17  that if any one person was to shoot and kill a woman in

18  a situation like this, that all four are charged with

19  murder; and that under the law all four could be

20  convicted of murder, and, actually, first degree

21  murder.

22       Mr. Brown fully understands that.  The reason

23  that he's here today is because he understands that.

24  If he did not understand that, we would be going to

25  trial.  But he tells me, Judge, that he understands the

KIA PEPPON, TCR, CVR-CM                              -21-

22 <sup>7344113</sup>

04:01:18 p.m.    11-16-2011    25/34

State v. Anthony L. Brown
Plea
3-13/07

1    hand of one is the hand of all and that as a result,

2    he's here before the Court.

3         THE COURT:  Thank you, Mr. Tootle.  Anything

4    else you would like to tell me, sir?

5         MR. TOOTLE:  Judge, he's not had a -- although

6    he appears to be a reasonably healthy young man, he was

7    from some tragic circumstances.  His mother is a

8    resident of New York.  His father has not been around

9    for many, many years.  He was raised by wonderful and

10   loving grandparents of the Reverend and Ms. Walters,

11   Madison Walters, who have been close with me throughout

12   this case; and they're close with their grandson; and

13   actually he calls his granddaddy Daddy.  So from the

14   time he was three years old, he was raised by his

15   grandfather and his grandmother, who desperately love

16   him and are trying their best to get him on the right

17   path, Judge.

18        This has torn up many families.  This has not

19   only torn up the Maloney family.  This has torn up the

20   Walters family.  I'm convinced it's torn up the Brown

21   family, and the other families involved in this, also.

22   A very, very tragic case, Judge.  I don't know of any

23   case that I've ever handled that is more tragic than

24   this, nor that had more different stories and lines to

25   it.

MIA PEPRON, CUR, CVR-CM                          -22-

State v. Anthony L. Brown
Plea
3/13/07

1    I think that the negotiated plea is fair. Under

2    the circumstances, I think it's fair. I have talked to

3    Lamar Brown about this plea for quite some time now,

4    and he believes it to be fair under the circumstances.

5    And we ask the Judge to consider it carefully and

6    approve the negotiated plea and adopt it.

7    We would also request that the Court grant him

8    time served. He went into jail -- he was arrested for

9    this offense and went into jail on April the 28th of

10   2004.

11   THE COURT: All right, sir.

12   Mr. Brown, is there anything you would like to

13   say, sir?

14   MR. BROWN: No.

15   THE COURT: Anything further from anyone?

16   MR. ALEXANDER: No, Your Honor.

17   THE COURT: I do find a substantial factual

18   basis for this plea, that your decision to plead

19   guilty, Mr. Brown, is freely, voluntarily,

20   intelligently, knowingly, and with consent of competent

21   counsel with whom you tell me you're satisfied, sir,

22   and I will accept your plea. Additionally, sir, I will

23   accept the negotiated sentence as negotiated between

24   your attorney and the solicitor.

25   On indictment number 2004-GS-15-420 -- it's for

MIA PERRIN, CCP, CVR-CM                                    -23-

24 <sup>734 4113</sup>

State v. Anthony L. Brown
Plea
3/13/07

1    murder -- the sentence of this Court is that you be

2    committed to the Department of Corrections, sir, for a

3    period of forty years.  On indictment number 2004-GS-

4    15-421 -- that is an indictment for armed robbery --

5    the sentence of this Court is that you be committed to

6    the Department of Corrections for a period of thirty

7    years.  Those two sentences are to run concurrent to

8    each other, sir, and you are to be given credit for the

9    time you have served from April 28th of 2004 until

10   present.  Good luck to you, Mr. Brown.

11             [PLEA CONCLUDES AT 10:25 A.M.]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

KIA PERRON, CCP, CVR-CM                                    -24-

State v. Anthony L. Brown
Plea
3/13/07

C E R T I F I C A T E

STATE OF SOUTH CAROLINA

COUNTY OF COLLETON

I, the undersigned Mia Perron, Official Court Reporter
for the 14th Judicial Circuit of the State of South
Carolina, do hereby certify that the foregoing is a true,
accurate, and complete transcript of the plea of Anthony
L. Brown, held before the Honorable Carmen T. Mullen, on
March 13, 2007.

I do further certify that I am neither kin nor counsel
to any of the parties and have no interest in the outcome
of this action.

Dated this 18th day of May, 2007.

Mia Perron
Mia Perron, CCR, CVR-CM
Circuit Court Reporter
9th Judicial Circuit

MIA PERRON, CCR, CVR-CM                                    -25-

26                                                                              14 mF

STATE OF SOUTH CAROLINA        )        In the Court of Common Pleas
                               )
County of Colleton             )        08-CP-15-1038
                               )
Anthony La'Mar Brown #251490   )
Full name and prison number, if any, of applicant.   )
                               )        APPLICATION FOR
           v.                  )
                               )        POST-CONVICTION RELIEF
State of South Carolina        )
Name of Respondent             )
Colleton County                )

INSTRUCTIONS - READ CAREFULLY

        In order for this application to receive consideration by the Court, it shall be in writing (legibly, handwritten, or typewritten), signed by the applicant and verified (notarized), and it shall set forth in concise form the answers to each applicable question. If necessary, applicant may furnish his answer to a particular question on the reverse side of the page or on an additional page. Applicant shall make it clear to which question any such continued answer refers.

        Since every application must be sworn to under oath, any false statement of a material fact therein may serve as the basis of prosecution and conviction for perjury. Applicant should, therefore, exercise care to assure that all answers are true and correct.

        If the applicant is taken in forma pauperis, it shall include an affidavit (attached at the back of the form) setting forth information which establishes that applicant will be unable to pay the fees and costs of the proceedings. When the application is completed, the original shall be mailed to the Clerk of Court for the County in which applicant was convicted.

1. Place of detention Perry Corr. Inst. Q1 B/204, 430 Oaklawn Rd., Pelzer, S.C. 29669

2. Name and location of Court which imposed sentence Colleton County General Sessions Court. P.O. Box 620 Walterboro, S.C. 29488

3. The indictment number or numbers (if known) upon which and the offense or offenses for which sentence was imposed:
   (a) ~~(blacked out)~~ (Murder)        # 04GS15 - 0420
   (b) ~~(blacked out)~~ (Armed Robbery) # 04GS15 - 0421
   (c) _____

4. The date upon which sentence was imposed and the terms of the sentence:
   (a) Tuesday, March 13, 2007 ... 40 yrs & 30 yrs concurrent.
   (b) _____
   (c) _____

CERTIFIED TRUE COPIES OF RECORDS

Patricia L. Grant
CLERK OF COURT, COMMON PLEAS COURT
COLLETON COUNTY, SOUTH CAROLINA
DATE: 12/1/08

5. Check whether a finding of guilty was made
   ✓ (a) after a plea of guilty ___YES___
   (b) after a plea of not guilty ___N/A___
   (c) after a plea of nolo contendere ___N/A___

6. Did you appeal from the judgment of conviction or the imposition of sentence? ___YES___

7. If you answered "yes" to (6), list
   (a) the name of each Court to which you appealed:
      i. _S.C. Court of Appeals (Direct Appeal)_
      ii. _____
      iii. _____
   (b) the result in each such Court to which you appealed:
      i. _S.C. Court of Appeals — Dismissed & Denied._
      ii. _____
      iii. _____
   (c) the date of each such result:
      i. _Submitted July 1, 2008 — Filed July 11, 2008_
      ii. _Unpublished Opinion No. 2008-UP-365_
      iii. _____
   (d) if known, citations of any written opinion or orders entered pursuant to such results:
      i. _Unpublished Opinion No. 2008-UP-365_
      ii. _____
      iii. _____

8. If you answered "no" to (6), state your reasons for not so appealing:
   (a) _N/A_
   (b) _____
   (c) _____

9. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
   (a) _Ineffective Assistance of Trial Counsel_
   (b) _Prosecutor Misconduct_
   (c) _Judge Abuse of Discretion_

10. State concisely and in the same order the facts which support each of the grounds set out in    (9)
    (a) _(See Attachment) A I / A II_____

    _____

    (b) _____

    _____

    (c) _____

    _____

11. Prior to this application have you filed with respect to this conviction

    (a) any petition in a State Court under South Carolina Law ?
        _____N/A_____

    (b) any petitions in State or Federal Courts for habeas corpus or post-conviction relief?
        _____N/A_____

    (c) any petitions in the United States Supreme Court for certiorari other than petitions, if any,
        already specified in (7) _N/A_____

    (d) any other petitions, motions or applications in this or any other Court?
        _____N/A_____

12. If you answered "yes" to any part of (11), list with respect to each petition, motion or
    application:

    (a) the specific nature thereof:
        i.    _____
        ii.   _____
        iii.  _____N / A_____
        iv.   _____

    (b) the name and location of the Court in which each was filed:
        i.    _____
        ii.   _____
        iii.  _____N / A_____
        iv.   _____

    (c) the disposition thereof:
        i.    _____
        ii.   _____
        iii.  _____N / A_____
        iv.   _____

3

28

## A-(II)

## Ineffective Assistance of Trial Counsel

8) Counsel's performance fell below an objective standard of reasonableness, and, but for counsel's errors there is a reasonable probability that the result at trial would have been different.

9) Failure to comply to the mandate set forth in advising the voluntariness of the guilty plea phase.

## Prosecutorial Misconduct

1) Failure to disclose deal agreement made by Co-Defendants, witnesses.

## Judge Abuse of Discretion

1) Trial Judge erred/abused it's discretion when:

a) It failed to sustain during the guilty plea phase that the applicant's plea was given freely & voluntary.

b) It failed to give a complete "competency test" to insure applicant's competency to plea guilty.

17. If you answered "yes" to one or more parts of (16), list:

    (a) the name and address of each attorney who represented you

        i.   Kenneth L. Tootle, P.O. Box 1321, Beaufort, SC. 29901

        ii.  Robert M. Pachak, P.O. Box 11589, Cola, S.C. 29211

        iii.

    (b) the proceedings at which each such attorney represented you:

        i.   Trial

        ii.  Direct Appeal

        iii.

18. State clearly the relief you seek in filing this application.

Applicant is seeking that the Trial Court's sentence and conviction be vacated; new trial or time-cut.

19. Are you now under sentence from any other court that you have not challenged?

No.

30

State Of South Carolina                      In The Court Of Common Pleas
County Of Colleton                           For The 14th Judicial Circuit

                                                08-CP-15-1038

Anthony L. Brown,    )
     plaintiff       )
                     )                        MOTION TO COMPEL
                     )
        vs.          )                        ORDER GRANTING OR DENYING MOTION
                     )
————                 )
State Of S.C. ,      )
     defendant       )

_____


        Comes now, the above captioned plaintiff, and moves before this Honorable
Court for an order compelling the Solicitor's Office for the 14th circuit to
provide the plaintiff with a full and complete copy of all materials in their
possession that fall under Rule 5 of the SCRCP and any other discoverable
material relating to the plaintiff and his codefendants. The plaintiff has
requested these same materials from the Solicitor's Office by writing Terry K.
Alexander at P.O. box620, Walterboro, S.C. 29488; as well as by writing Kenneth
L. Tootle; the plaintiff,s counsel who represented him in the above referenced
case, at P.O. Box 1321, Beaufort, S.C. 29901. However; both have ignored the
plaintiff,s request. During an institutional transfer, when the plaintiff was
being transfered from one facility to another, the SCDC lost the plaintiff,s
legal materials, and as the plaintiff is now going through the appeals and PCR
process it is imperative that he have all of the documentation from his case.
The plaintiff contends that he has tried numerous times to obtain the afore-
mentioned materials, to no avail, and feels that an order from this Honorable
Court  ordering the Solicitor's Office to provide the plaintiff with the
requested materials is the only way the issue will get resolved.
WHEREFORE, having shown just cause for the order requested, the plaintiff
prays this Honorable Court grant the plaintiff's motion to compel.

                        _Anthony L. Brown_
                        Anthony L. Brown, plaintiff # 251490

                        Perry C.I. Q - 1 - B - 204
                        430 Oaklawn Road
                        Pelzer, S.C. 29669

31

STATE OF SOUTH CAROLINA )                IN THE COURT OF COMMON PLEAS
                        )
COUNTY OF _Colleton_    )
                        )
_14th Cir. General Sessions Court_ )    CIVIL ACTION COVERSHEET
                        )
              Plaintiff(s) )            _08_-CP-_15_-_1038_
                        )
              vs.       )
                        )
_Anthony La'Mar Brown_  )
                        )
              Defendant(s) )

| (Please Print) | |
| Submitted By: _Anthony L. Brown # 251490_ | SC Bar #: _____ |
| Address: ████████████████ | Telephone #: _____ |
| | Fax #: _____ |
| | Other: _____ |
| | E-mail: _____ |

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)

*If Action is Judgment/Settlement do not complete

☑ JURY TRIAL demanded in complaint.    ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR (certificate attached).

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (160) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | ☐ Notice/ File Med Mal (230) | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | ☐ Other (299) | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | | ☐ Personal Injury (350) | ☐ Possession (450) |
| | | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☑ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Sexual Predator (510) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Mandamus (520) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Habeas Corpus (530) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| ☐ Other (599) | ☐ Transcript Judgment (740) | ☐ Forfeiture (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Other (899) | ☐ SCDOT (950) |
| | ☐ Other (799) | | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Administrative Law Judge (980) |
| | | | ☐ Public Service Commission (990) |
| Special/Complex, Other | | | ☐ Employment Security Comm (991) |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | | ☐ Other (999) |
| ☐ Automobile Arb (610) | ☐ Unfair Trade Practices (640) | | |
| ☐ Medical (620) | ☐ Out of State Depositions (650) | | |
| ☐ Other (699) | | | |

Submitting Party Signature: _[signature]_    Date: _10/02/08_

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

SCCA /234 (8/06)                                Page 1 of 2

32

STATE OF SOUTH CAROLINA    )
                           )    IN THE COURT OF COMMON PLEAS
COUNTY OF COLLETON         )
                           )
                           )    2008-CP-15-1038
                           )
Anthony L. Brown, #251490, )
                           )
              Applicant,   )
                           )
         v.                )    RETURN
                           )
State of South Carolina,   )
                           )
              Respondent.  )
_____)

The Respondent, making its Return to the Application for post-conviction relief filed November 6, 2008, would respectfully show this Court:

I.

The Applicant is presently confined in the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Colleton County.  The Applicant was indicted at the July 2004 term of the Colleton County Grand Jury for murder (2004-GS-15-420) and armed robbery (2004-CP-15-421).  Kenneth L. Tootle, Esquire, represented the Applicant.  On March 13, 2007, the Applicant pled guilty as indicted.  Pursuant to a negotiated plea agreement, the Honorable Carmen T. Mullen sentenced the Applicant to confinement for forty (40) years for murder and thirty (30) years for armed robbery.  The sentences were to run concurrently.

A timely Notice of Appeal was filed on Applicant's behalf and an appeal was perfected.  Robert M. Pachak, Esquire, of the South Carolina Office of Appellate Defense, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).  The South Carolina Court of Appeals

dismissed the appeal. <u>State v. Brown</u>, Op. No. 2008-UP-365 (S.C. Ct. App. filed July 11, 2008). The Remittitur was issued July 29, 2008.

Attached herewith and incorporated herein by reference are the records of the Colleton County Clerk of Court regarding the subject convictions, the Applicant's records from the Department of Corrections, the Record on Appeal, the Final <u>Anders</u> Brief of Appellant, the Court of Appeals' opinion dismissing the appeal, and the Remittitur dated July 29, 2008.

## II.

In his application, the Applicant alleges that he is being held in custody unlawfully for the following reasons:

1.  Ineffective assistance of counsel in that counsel
    a.  Failed to subpoena witnesses known at the time of the guilty plea.
    b.  Failed to properly investigate and interview witnesses.
    c.  Failed to suppress insufficient warrants/indictments and Grand Jury panel.
    d.  Failed to communicate.
    e.  Failed to advise defendant of rights/consequences of pleading guilty.
    f.  Failed to make specific <u>Brady</u> requests that violated due process.
    g.  Knowingly and willfully withheld evidence that deprived Applicant of his right to due process.
    h.  Performance fell below an objective standard of reasonableness.
    i.  Failed to comply with mandate set forth in advising the voluntariness of guilty plea phase.

2.  Prosecutorial misconduct in that prosecution failed to disclose agreements made by co-defendants and witnesses.

3.  Plea judge abused discretion in failing to ensure that Applicant's plea was freely and voluntarily entered and failing to give Applicant a complete competency test.

## III.

In a post-conviction relief action, the Applicant bears the burden of proving the allegations in the application. <u>Butler v. State</u>, 286 S.C. 441, 334 S.E.2d 813 (1985). Where the

34

application alleges ineffective assistance of counsel as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler, 286 S.C. 441, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The Applicant must overcome this presumption in order to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

The reviewing court applies a two-pronged test in evaluating allegations of ineffective assistance of plea counsel. First, the Applicant must prove that counsel's performance was deficient. Under this prong, the court measures an attorney's performance by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 386 S.E.2d at 625 (citing Strickland). Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625.

The Respondent submits that the Applicant cannot satisfy either requirement of the Strickland test. However, the allegation of ineffective assistance of counsel probably raises questions of fact that the record does not conclusively refute. Accordingly, the Respondent requests an evidentiary hearing to fully resolve this issue. See Sharper v. State, 279 S.C. 264, 305 S.E.2d 247 (1983).

3

IV.

The State submits that Applicant's allegation of prosecutorial misconduct is entirely without merit. The record of the guilty plea clearly indicates that the plea was knowingly, intelligently, and voluntarily entered within the mandates of Boykin v. Alabama, 395 U.S. 238 (1969). See LoPiano v. State, 270 S.C. 563, 243 S.E.2d 448 (1978). The Applicant has not offered any reason to depart from the truth of his statements at the plea proceeding, and bare contradictions of these statements are not sufficient to overcome the finality of the conviction. Blackledge v. Allison, 431 U.S. 63 (1977); Crawford v. U.S., 519 F.2d 347 (4th Cir. 1975). Moreover, the Applicant has failed to specify what misconduct allegedly occurred. Therefore, the State submits this allegation should be summarily dismissed.

V.

The Applicant alleges that the plea judge abused his discretion in failing to ensure that the plea was freely and voluntarily entered and in failing to get Applicant a competency evaluation. These allegations raise direct appeal issues that are procedurally barred by S.C. Code Ann. §17-27-20(b) (2003). Post-conviction relief is not a substitute for a direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1974). A post-conviction relief application cannot assert any issues that could have been raised at trial or on direct appeal. Ashley v. State, 260 S.C. 436, 196 S.E.2d 501 (1973). The Applicant could have raised these issues at trial or on appeal. His failure to do so has waived these allegations as grounds for relief. Therefore, the Court should summarily dismiss these allegations.

VI.

The Respondent denies each allegation that is not expressly admitted, qualified, or explained.

36

## VII.

WHEREFORE, having made its Return, the Respondent requests that an evidentiary hearing be held solely on the issue of ineffective assistance of counsel.

Respectfully submitted,

HENRY DARGAN McMASTER
Attorney General

JOHN W. McINTOSH
Chief Deputy Attorney General

SALLEY W. ELLIOTT
Assistant Deputy Attorney General

MATTHEW J. FRIEDMAN
Assistant Attorney General

By: _Matt A. Fried_
ATTORNEYS FOR RESPONDENT

Office of the Attorney General
P.O. Box 11549
Columbia, SC 29211
(803) 734-3737

_March 20_, 2009.

STATE OF SOUTH CAROLINA    )
                           )    IN THE COURT OF COMMON PLEAS
COUNTY OF COLLETON         )
                           )
                           )    2008-CP-15-1038
                           )
ANTHONY L. BROWN, #251490   )
                           )
            Applicant,     )
                           )
    vs                     )    AFFIDAVIT OF SERVICE BY MAIL
                           )
STATE OF SOUTH CAROLINA,    )
                           )
            Respondent.    )
_____)

1.    I am an employee of the Respondent in the above-captioned action.

2.    Regular communication by mail exists throughout the State of South Carolina and that this is a proper circumstance of service by mail.

3.    I have this day served a copy of the **Return** in the above-captioned matter on the following person by depositing same in the United States mail, postage prepaid:

> **Kenneth L. Tootle, Esquire**
> **P.O. Box 1321**
> **Beaufort, SC 29902**

DATED this 20th day of March, 2009

Angela Bennett, Legal Assistant
For Respondent

38

STATE OF SOUTH CAROLINA  ) IN THE COURT OF COMMON PLEAS
                         )
COUNTY OF COLLETON       ) CASE NO.:  2008-CP-15-01038


ANTHONY LAMAR BROWN,          )
                             )
        APPLICANT,           )
                             )
        v.                   )     TRANSCRIPT OF RECORD
                             )
THE STATE OF SOUTH CAROLINA, )
                             )
                             )
_____)


                    SEPTEMBER 3RD, 2010
                 WALTERBORO, SOUTH CAROLINA
        BEFORE THE HONORABLE PERRY M. BUCKNER, III, JUDGE.


APPEARANCES:

ASST. ATTORNEY GENERAL MATTHEW FRIEDMAN, ESQUIRE
OFFICE OF THE ATTORNEY GENERAL
POST OFFICE BOX 11549
COLUMBIA, SOUTH CAROLINA 29211-1549
Attorney for the State of South Carolina

MR. J. D. BRYAN, ESQUIRE
209 E. WASHINGTON STREET
WALTERBORO, SOUTH CAROLINA 29488
Attorney for the Defendant


                              Rebecca H. Hill
                              522 Dowling Avenue
                              Walterboro, SC 29488
                              Official Court Reporter

INDEX

WITNESS:  ANTHONY LAMAR BROWN
DIRECT EXAMINATION BY MR. BRYAN ........................ 10
CROSS EXAMINATION BY ASST. ATTY. GEN. FRIEDMAN ......... 14
REDIRECT EXAMINATION BY MR. BRYAN ...................... 15

WITNESS:  JAMAL WASHINGTON
DIRECT EXAMINATION BY ASST. ATTY. GEN. FRIEDMAN ........ 16

WITNESS:  LEONARD STANFIELD
DIRECT EXAMINATION BY MR. BRYAN ....................... 18

WITNESS:  KENNETH TOOTLE, ESQUIRE
DIRECT EXAMINATION BY MR. BRYAN ....................... 22
CROSS EXAMINATION BY ASST. ATTY. GEN. FRIEDMAN ......... 27

CLOSING ARGUMENT
     BY MR. BRYAN ...................................... 33
     BY ASST. ATTY. GEN. FRIEDMAN ..................... 34

CERTIFICATE OF REPORTER ................................ 38

EXHIBITS

NONE.

40

3

1    **THE COURT:**  Let the record reflect the calling of this

2    case that I have read the Application of Post-Conviction

3    Relief.  I've read the transcript of the plea, I've read the

4    Return of the State of South Carolina, and I've reviewed the

5    sentence sheets and the indictments.  Call your case.

6    **ASST. ATTY. GEN. FRIEDMAN:**  Thank you, Your Honor.

7    Anthony Lamar Brown.  This is docket number 2008-CP-15-1038,

8    a Colleton County case.  Mr. Brown was indicted in July of

9    2004 for murder and armed robbery.  He pled guilty on March

10   13th, 2007.  He received a negotiated sentence of 40 years

11   for murder and 30 years for armed robbery, and those were

12   run concurrently.

13   He filed a direct appeal.  He filed an <u>Anders</u> Brief.

14   The Court of Appeals dismissed that appeal on July 11th,

15   2008.  He filed this Application on November 6th, 2008, and

16   is represented by Mr. Bryan.

17   **THE COURT:**  Mr. Bryan, happy to hear from you.  Are you

18   ready to call your first witness?

19   **MR. BRYAN:**  Yes, Your Honor.  We call Anthony Lamar

20   Brown to the stand.

21   **THE COURT:**  Mr. Brown.  If you'll get me my Bible, Mr.

22   Padgett, and hold it for him.

23   (Bailiff, Mr. Padgett, holds the Bible.)

24   **APPLICANT:**  Your Honor, before I proceed, could I have

25   a few minutes, please, before I take the stand?

1      THE COURT:   You need to talk to your attorney.   Let

2   him know and he'll tell me.   Tell your attorney.

3      (SOTTO VOICE DISCUSSION BETWEEN ATTORNEY JOHN BRYAN AND

4   APPLICANT.)

5      MR. BRYAN:   Your Honor, he tells me that he's filed a

6   motion to relieve counsel, and I have no objection.

7      THE COURT:   It's a motion to relieve counsel?

8      MR. BRYAN:   Yes, Your Honor.

9      THE COURT:   All right.   Has it been served on the State

10  of South Carolina?

11     ASST. ATTY. GEN. FRIEDMAN:   No, Your Honor.

12     THE COURT:   Well, although they don't have complete dog

13  in the hunt, Mr. Bryan, come around here, if you would, Mr.

14  Bryan, along with your client.   You know the grounds for it,

15  Mr. Bryan?

16     MR. BRYAN:   No, Your Honor.

17     THE COURT:   Well, I think you need to talk to him for a

18  minute so you can tell me and not just -- I'll hear his

19  motion, but I want to make sure that he doesn't say anything

20  that will hurt his case.   So, talk to him and find out

21  before I hear it.

22     (SOTTO VOICE DISCUSSION BETWEEN ATTORNEY JOHN BRYAN AND

23  APPLICANT.)

24     THE COURT:   All right.   Mr. Bryan, come on around.

25  I've given you a minute so that you know the grounds of it.

42

5

1    Tell me what this is about.  I'm assuming that you were

2    appointed and not retained; is that correct?

3        MR. BRYAN:    That's correct, Your Honor.

4        THE COURT:    All right.  So you were appointed to this

5    matter.  Do you know of any conflict that you might have in

6    representing this Applicant?  I'm not talking about his

7    wishes, yet.  I want to know if you have a conflict.

8        MR. BRYAN:    Not really, Your Honor.

9        THE COURT:    Are you prepared to go forward today?

10        MR. BRYAN:    Yes, sir.

11        THE COURT:    All right.  I've given you a moment to talk

12    to him.  Can you articulate, as his attorney, what he tells

13    you is the reason that he wants you relieved?

14        MR. BRYAN:    Well, he wants me to raise issues that I

15    don't really think are valid issues, and he wants me to

16    subpoena witnesses, who I'm pretty sure would testify

17    against us; such as the co-defendants, who basically blamed

18    him in order to get out of a murder conviction, Your Honor.

19        THE COURT:    I understand.  Has your lawyer accurately

20    told me what your reason is for him moving to be relieved,

21    Mr. Brown?

22        APPLICANT:    Not accurately.

23        THE COURT:    All right.  Is there something else?

24        APPLICANT:    Yes, there is.

25        THE COURT:    I want you to be careful, because it's much

1  better for you to speak through your attorney.

2       **APPLICANT:**  All right.

3     **THE COURT:**  And I don't want to get into any of your

4  trial strategy, because that's a matter between you and your

5  attorney.  Is there some other reason that you feel like

6  your attorney cannot adequately represent you, other than

7  you disagreeing with what he believes is the best way to

8  present the case?

9     **APPLICANT:**  Well, Your Honor, I understand where Mr.

10 Bryan is coming from, but I had a hard time getting into the

11 law library at Perry Correctional.  I wrote Mr. Bryan on

12 several occasions for him to send me some kind of

13 documentation showing that I have court coming up in the

14 near future, so I can gain unlimited access through the law

15 library.  He don't respond to my letters, or anything,

16 beside the subpoenas, the witnesses, interviews, he doesn't

17 do anything, Your Honor.  I've submitted three or four

18 issues that I would like Mr. Bryan to bring up in Court.

19    **THE COURT:**  Mr. Bryan, he's telling me you hadn't

20 responded to him, and, obviously, an issue of access to the

21 law library is not an issue for post-conviction relief.

22 However, I want to know whether or not you feel like you're

23 prepared to go forward on this Application which I've

24 reviewed.

25    **MR. BRYAN:**  Well, I am, Your Honor, but if he'd rather

44

1    have another lawyer ---

2        THE COURT:  Well, he doesn't get to decide that, Mr.

3    Bryan.  You know that.  I do.  It's not up to him.  I want

4    to know if you're prepared; not what he wishes, necessarily.

5    I have heard from him, but he doesn't decide who is an

6    appointed attorney, the Court does.  Now, I need to know if

7    you're prepared.

8        MR. BRYAN:  Yes.

9        THE COURT:  You are?

10        MR. BRYAN:  Yes.

11        THE COURT:  Okay.  He says you didn't respond to him

12    about the law library, but there are a number of issues

13    raised in his Application that I've just reviewed, and

14    they're articulated very well in the Application.  He drew

15    it and I've reviewed every one of them.  Are you ready to go

16    forward on those issues.

17        MR. BRYAN:  Yes.

18        THE COURT:  All right.  Now, Mr. Brown, I want you to

19    understand, although I'm certainly willing to listen to you,

20    you don't decide who your appointed attorney is; do you

21    understand that?

22        APPLICANT:  I do.

23        THE COURT:  The Court does.  Now, your lawyer tells me

24    he's ready to proceed and he has no conflict in representing

25    you.  Is there anything else you want to tell me as to why

1    your lawyer ought to be relieved that you haven't told me?

2        **DEFENDANT:**  Yes, sir.

3        **THE COURT:**  All right.  What is it?

4        **APPLICANT:**  I filed three, four more issues.  He has

5    copies of the issues that I would like to address to the

6    Court, but he hasn't done the background work, the leg work,

7    for the issues.  He hasn't looked up the case laws.  He

8    doesn't even know how to lead me on as to where I would

9    answer the questions properly, Your Honor.

10        **THE COURT:**  But you know, Mr. Brown, you aren't an

11    attorney.

12        **APPLICANT:**  I understand.

13        **THE COURT:**  He is.

14        **APPLICANT:**  I understand.

15        **THE COURT:**  He has to decide what is a proper legal

16    issue, even if you disagree on what is not.  Now, I don't

17    know what you are talking about, and I don't want to get

18    into your strategy, but just because you are of the opinion

19    as a layman that something is a proper issue, doesn't mean

20    that an attorney will agree with you.  It's perfectly normal

21    for attorneys and clients not to always agree on legal

22    issues.  Now, is there any other reason you want to tell me

23    why you believe he should be relieved, other than you don't

24    agree with what he thinks is the proper issues to be

25    presented to the Court, because I don't want to get into the

1  details, so as not to prejudice anything that I should hear

2  as a Judge?  Anything else you want to tell me?

3      **APPLICANT:**  That's my main concern, Your Honor.

4      **THE COURT:**  Now, Mr. Bryan, Mr. Brown feels like he

5  presented some issues to you that would necessitate you

6  possibly moving to amend his Application for Post Conviction

7  Relief.  Have you considered that?

8      **MR. BRYAN:**  I've considered it, Your Honor, but it

9  would appear that the issues that struck me as good were

10  more of grounds supporting the ineffective assistance of

11  counsel claimed in a separate and independent issues.

12      **THE COURT:**  So you feel like his Application adequately

13  addresses all of the issues necessary to protect his

14  interests?

15      **MR. BRYAN:**  Yes, Your Honor.

16      **THE COURT:**  Very well.  Your request to have Mr. Bryan

17  relieved is respectfully denied.  Come around to the witness

18  stand and be sworn.

19      WHEREUPON, APPLICANT ANTHONY LAMAR BROWN, IS DULY

20  SWORN.

21      **THE COURT:**  Mr. Padgett, help him.  Mr. Brown, come

22  over here.  He's going to help you, because you've got those

23  leg irons on.  I don't want you walking up the stairs like

24  that.  Make yourself comfortable.  Tap the microphone for

25  me.  State your full name and spell your last name for the

Direct Examination of Anthony Brown by Mr. Bryan                    10

1   court reporter.

2        **APPLICANT:**  Anthony Brown, B-R-O-W-N.

3        **THE COURT:**  Your witness, Counsel.

4                    **DIRECT EXAMINATION**

5   **BY MR. BRYAN:**

6   Q    Mr. Brown, what prison are you in currently?

7   A    Perry Correctional.

8   Q    And what charges are you in there for?

9   A    Murder and armed robbery.

10  Q    Who represented you on these charges?

11  A    Ken Tootle out of Beaufort, South Carolina.

12  Q    Was he appointed or retained?

13  A    Retained.

14  Q    How long did he represent you before you came to trial

15  or plea?

16  A    Approximately 32 months, 33 months.

17  Q    During that time, how many times did he come to see you

18  at the Colleton County Jail?

19  A    Let's see, four -- three or four times.

20  Q    Did you tell Mr. Tootle about any witnesses you had?

21  A    Yes, I did.

22  Q    What did you tell him about these witnesses?

23  A    Well, I explained the number of witnesses that I had

24  and asked them what they would testify to.

25  Q    Uh-huh.

48

1    **A**    Well, I gave him, I think it was, Jamal Washington,

2    Lennon Stanfield, Jermaine Glover, Leslie Taylor; I can't

3    remember every name right off the top.  I probably would

4    have to look inside my papers.

5        **THE COURT:**  Do you have those?

6        **APPLICANT:**  Yeah.

7        **THE COURT:**  All right.  When you're giving proper names

8    like that, make sure the court reporter can spell them

9    correctly.  Go ahead.

10   **Q**    What would they have testified to?

11   **A**    Well, they would have testified to the fact that the

12   victim's family, when the murder happened, the victim's

13   family stated that even though they didn't know who the

14   murderer was, they stated that they was going to call my

15   name anyway.  Taylor, Leslie Taylor, was the alibi.  She

16   testified that I was there with her that morning, as well as

17   my grandmother.  I think Jamal Washington, he testified.

18   Stanfield would have testified that Terez Brown told him

19   that I was not the trigger man and Alvin Warren was also a

20   witness.  He would have testified to the fact that seeing

21   Mr. Maloney and April Hampton together, because that was the

22   connection that Mr. Tootle said that he needed, was Maloney

23   and Hampton, and I gave him that connection also.  I believe

24   that's about all the witnesses, if I can remember.

25   **Q**    But you discussed that with Mr. Tootle?

Direct Examination of Anthony Brown by Mr. Bryan                12

1    A    Yes, I did.

2    Q    Did he subpoena any of these witnesses?

3    A    Uh ---

4    Q    Did you see them in the courtroom the morning your case

5    was called?

6    A    No, I didn't.

7    Q    If he had subpoenaed these witnesses, would you have

8    pled guilty ---

9    A    No, I would not.

10   Q    --- or would you have gone to trial?

11   A    I would have went to trial.

12   Q    How much did your lawyer advise you about your trial

13   rights?

14   A    How much did he advise me?

15   Q    Yeah.

16   A    The main thing I remember him advising me was before I

17   took the plea that I would be waiving certain constitutional

18   rights.  That was the main advisement that he gave me, and

19   really nothing else stands too clear.

20   Q    Just before you took the plea?

21   A    Yeah.

22   Q    Did he ever advise you that you had a right to be

23   proven guilty beyond a reasonable doubt?

24   A    Not that I can remember.

25   Q    So did you trial lawyer recommend that you hire a

50

1    detective?

2    A    I didn't hear you.  Excuse me?

3    Q    Did Mr. Tootle recommend that you hire a detective?

4    A    A private investigator?

5    Q    Yeah.

6    A    Sure, yes, he did.

7    Q    Did your family hire a detective?

8    A    Yes, we did.

9    Q    What did he find out?

10   A    Nothing.

11   Q    How long were you in jail before you went to court?

12   A    Three years.

13   Q    And at any time, did you lawyer discuss how much time

14   you might have to serve out of a sentence for murder?

15   A    No, I was under the impression that he said it was day

16   for day; that's my understanding that it was just day for

17   day.

18   Q    And he told you that?

19   A    Yes.

20        MR. BRYAN:   No further questions of this witness, Your

21   Honor.

22        THE COURT:   Cross examination?

23        ASST. ATTY. GEN. FRIEDMAN:   Thank you, Your Honor.

24                      CROSS-EXAMINATION

25   BY ASST. ATTY. GEN. FRIEDMAN:

Cross-Examination of Anthony Brown by Asst. Atty. Gen. Friedman    14

1  Q    Good morning, Mr. Brown.

2  A    Good morning.

3  Q    At your plea hearing, do you recall that you told the

4  Court that you understood the nature of the charges against

5  you?

6  A    Yes, I did.

7  Q    And you told the Court that you understood the possible

8  punishments of those offenses?

9  A    Yes, I did.

10  Q    At that time, you also told the Court that you were, in

11  fact, guilty of those offenses?

12  A    That I were.  In fact, somewhere in the transcript, I

13  told the clerk that I wasn't guilty of this charge.

14  Q    Do you recall that you specifically said you were

15  guilty of armed robbery; is that right?

16  A    I do.

17  Q    And that you said you were guilty of murder through the

18  hand of one is the hand of all?

19  A    I told them I understand it.

20  Q    Okay.  You told the Court you were completely satisfied

21  with your attorney.  Do you remember that?

22  A    Yes, I do.

23  Q    You told the Court that no one threatened you or

24  promised you anything to get you to plead guilty?

25  A    Yeah.

1   Q    You received a negotiated sentence; is that right?

2   A    I did.

3   Q    Do you understand what that meant?

4   A    At the time, all I knew is that I was pleading.  I was

5   young and naive.  I didn't really understand the specifics

6   of the law.

7   Q    Did you know what sentence you were receiving?

8   A    Did I know what sentence?

9   Q    In other words, you got 40 years for murder and 30

10  years for armed robbery; did you understand that?

11  A    Yes.

12  Q    You testified that you had some witnesses that you

13  wanted your attorney to subpoena?

14  A    Yeah.

15  Q    Did you give your attorney the names and addresses of

16  those people?

17  A    Yes, I did.

18       ASST. ATTY. GEN. FRIEDMAN:  Nothing further, Your

19  Honor.

20       THE COURT:  Redirect?

21                  REDIRECT EXAMINATION

22  BY MR. BRYAN:

23  Q    When you say you understood the nature of the charges,

24  was that based upon what your attorney had told you?

25  A    Solely based upon it, yeah.

Direct Examination of Jamal Washington by Mr. Bryan                16

1   Q    And when you said that you understood your trial

2   rights, was that based solely upon what your attorney told

3   you?

4   A    Yes.

5        MR. BRYAN:    No further questions of this witness, Your

6   Honor.

7        THE COURT:    Recross, limited to redirect?

8        ASST. ATTY. GEN. FRIEDMAN:    Nothing further, Your

9   Honor.

10       THE COURT:    You may step down.    Call your next witness,

11  Mr. Bryan.

12       MR. BRYAN:    We call Jamal Washington, Your Honor.

13       THE COURT:    Come around and be sworn, please, sir.

14  WHEREUPON, MR. JAMAL WASHINGTON IS DULY SWORN.

15       THE COURT:    Have a seat on the witness stand.    Make

16  yourself comfortable.    Talk into that microphone.    Speak up

17  and state your full name for the record and spell your last

18  name for the court reporter.

19       APPLICANT:    Jamal Washington, W-A-S-H-I-N-G-T-O-N.

20       THE COURT:    All right.    Your witness, Mr. Bryan.

21                       DIRECT EXAMINATION

22  BY MR. BRYAN:

23  Q    Mr. Washington, on the date of the murder, did you hear

24  Mr. Maloney and his family discussing it?

25  A    On the day of the murder?

54

1    Q    Or about that time?

2    A    It was a little bit about a couple of days after that.

3    Q    Okay.  And what were they saying?

4    A    They approached me about it.  I know I was at the Shell

5    station right around the corner over there and him and his

6    son came and approached me about it.

7    Q    They approached you about it?

8    A    Yes.

9    Q    And what did they say?

10   A    They was asking me if I had seen Anthony Brown and

11   stuff like that.  They was asking me if I had anything to do

12   with it.

13   Q    Okay.  And then what -- why were they asking about him?

14   A    I don't know.  I guess because they have a sister over

15   here and I don't know why.  Me and him used to work at that

16   place, you know, and I don't know what kind of beef they had

17   against him.

18   Q    Okay.  So it was like they were looking to blame him?

19   A    Yeah, pretty much.

20      MR. BRYAN:  I have no further questions of this

21   witness, Your Honor.

22      THE COURT:  Cross-examination?

23      ASST. ATTY. GEN. FRIEDMAN:  I have no questions, Your

24   Honor.

25      THE COURT:  You may step down.  Call your next witness.

```
 1        MR. BRYAN:  We call Leonard Stanfield, Your Honor.

 2        THE COURT:  Leonard Stanfield?

 3        MR. BRYAN:  Yes, Your Honor.

 4        WHEREUPON, MR. LEONARD STANFIELD IS DULY SWORN.

 5        THE COURT:  Help him, Mr. Padgett.  Is he restrained?

 6        MR. PADGETT:  Yes.

 7        THE COURT:  Watch those stairs.  Have a seat.  Pull the

 8   chair up.  Speak into the microphone.  State your full name

 9   and spell your last name for the court reporter.

10        WITNESS:  Leonard Stanfield, S-T-A-N-F-I-E-L-D.

11        THE COURT:  Your witness, counsel.

12                        DIRECT EXAMINATION

13   BY MR. BRYAN:

14   Q    Mr. Stanfield, were you ever in jail with the co-

15   defendant of Mr. Anthony Lamar Brown, a man named Anthony

16   Terez Brown?

17   A    Yes, sir.

18   Q    Did you -- did he ever say anything to you about this

19   charge?

20   A    Direct, no, sir.  I overheard a conversation.  He was

21   in the cell next to me and he was talking to somebody at the

22   back window.  There's a rec field in Colleton County and he

23   was talking to somebody on the rec field and I heard the

24   conversation and it was mentioned about the incident.

25   Q    And what was that conversation?
```

1    **A**    He said that he told the dude -- I don't know who the

2    dude was.

3        **ASST. ATTY. GEN. FRIEDMAN:**  Objection, Your Honor.

4    That's hearsay.

5        **THE COURT:**  Sustained.

6        **MR. BRYAN:**  It's a statement against penal interest,

7    Your Honor.

8        **THE COURT:**  Well, I don't know what the statement is.

9    There's not a jury here, Mr. Bryan.  Tell me what you

10   understand the witness is going to testify to.

11       **MR. BRYAN:**  That Mr. Terez Brown said that he ---

12       **THE COURT:**  Not to this witness, but to someone else.

13       **MR. BRYAN:**  Right, Your Honor.

14       **THE COURT:**  And this witness claims to have overheard,

15   so we're now at double hearsay, but go ahead.  You agree

16   it's hearsay; you just think it should be admitted under an

17   exception. So tell me what it is.

18       **MR. BRYAN:**  Terez Brown basically said in his

19   conversation, and I don't think it's double hearsay, just

20   because he overheard the conversation.

21       **THE COURT:**  Well, he wasn't speaking ---

22       **MR. BRYAN:**  Right.

23       **THE COURT:**  --- to the person that's going to be cross-

24   examined, Mr. Bryan.  Go ahead.

25       **MR. BRYAN:**  But basically he said that he was the

Direct Examination of Leonard Stanfield by Mr. Bryan                20

1    trigger man and that Anthony Lamar Brown wasn't even there,

2    but if they're going to blame him, he's not going to raise

3    any objections.  And if that statement, you know ---

4         THE COURT:  Now, you recognize, of course, that we're

5    not here to retry the case.

6         MR. BRYAN:  Right.

7         THE COURT:  Tell me, then, because apparently this

8    person was convicted of a crime in connection with this

9    incident, correct?

10        MR. BRYAN:  Right, Your Honor.

11        THE COURT:  And that person was present on the day of

12   your client's plea and according to what I read in the

13   transcript, was available to testify; is that right?

14        MR. BRYAN:  (NO RESPONSE.)

15        THE COURT:  When the plea was called, the declarant

16   that you're talking about right now, according to Mr.

17   Alexander, had changed his mind and was pleading guilty and

18   was going to testify; is that correct?

19        MR. BRYAN:  Yes, Your Honor.

20        THE COURT:  Now, what you want me to do is admit this

21   statement that you believe the witness is going to say

22   because it was inconsistent with what he would have

23   testified to at the guilty plea or if a trial had ensued

24   after the jury had been selected?

25        MR. BRYAN:  Well, it would have been a statement

58

1    against penal interest and it would have also been a prior

2    inconsistent statement, Your Honor.

3        **THE COURT:**  All right.  I'll let him answer the

4    question over the objection.  I think it's hearsay, but I'll

5    take it for what I think it's worth.  Rephrase your question

6    and I'll let him answer it.

7    **Q**    And in this conversation, did you hear Mr. Anthony

8    Terez Brown speak about this incident?

9    **A**    Yes, sir.

10    **Q**    And what did Mr. Anthony Terez Brown say?

11    **A**    He was telling the dude on the rec field, the other

12    inmate, he was telling the other inmate that he was charged

13    with murder, but they didn't have no gun.  They didn't have

14    nothing on him.

15    **Q**    Did he say anything about Anthony Lamar Brown?

16    **A**    Not that I remember, unh-unh, no, sir.

17        **THE COURT:**  Anything further?

18        **MR. BRYAN:**  Nothing further, Your Honor.

19        **THE COURT:**  Cross examination?

20        **ASST. ATTY. GEN. FRIEDMAN:**  Nothing, Your Honor.

21        **THE COURT:**  You may step down.  Call your next witness.

22        **MR. BRYAN:**  We call Mr. Tootle.

23        **THE COURT:**  Come around, please, sir.  Be sworn by the

24    bailiff.

25        WHEREUPON, MR. KENNETH TOOTLE IS DULY SWORN.

1      **THE COURT:**  Have a seat on the witness stand.  Watch

2  the steps there.  Pull the microphone over.  State your full

3  name and spell your last name for my court reporter.

4      **WITNESS:**  My name is Kenneth Lynn Tootle, T-O-O-T-L-E.

5      **THE COURT:**  Your witness, counsel.  Direct examination.

6                        **DIRECT EXAMINATION**

7  **BY MR. BRYAN:**

8  **Q**    Mr. Tootle, how long did you represent Mr. Anthony

9  Lamar Brown?  The length of time?

10 **A**    Probably close to two and a half years; two years, two

11 and a half years.

12 **Q**    Now, you had a pretty extensive file there.  Was there

13 any physical evidence placing Mr. Anthony Lamar Brown at the

14 crime scene?  A gun?

15 **A**    There was no gun.  The gun was never found.  There was

16 physical evidence at the place where Mr. Nelson carried them

17 to.  Did that directly connect up with Mr. Brown?  No, not

18 like DNA and stuff of that nature, no.

19 **Q**    But at the crime scene, there was nothing to indicate

20 that Mr. Brown -- no physical evidence?

21 **A**    At the scene itself, there was physical evidence.

22 There were gun casings, places where bullets went into the

23 wall, but specifically gun casings.  There was blood.  Did

24 this tie DNA to Mr. Brown?  No, it did not.

25 **Q**    Right.

**60**

1  A    But there certainly was physical evidence there.

2  Q    Right.   There was physical -- I would agree there was

3  physical evidence that a crime had been committed, but was

4  there any physical evidence to connect Mr. Lamar Brown with

5  this crime? Was there anything there?

6  A    There was nothing specifically to Mr. Brown.

7  Q    And when the gun was recovered, it was recovered by

8  who?

9  A    I don't recall a murder -- gun ever being recovered.

10  Q    Mr. Tootle ---

11  A    Now, please understand, you've had my file for the last

12  year and a half and I haven't had the opportunity to review

13  it.

14  Q    Okay.

15  A    But to the best of my knowledge, the actual weapon

16  involved in this sad situation was not recovered.

17  **THE COURT:**   Mr. Tootle, at any point that you want to

18  review your file to refresh recollection, you certainly may

19  do so.   I assume that box on the counsel table is your file,

20  which you provided to Mr. Bryan to prepare for this hearing.

21  So feel free if you want to at any time to do so.

22  **MR. TOOTLE:**   Thank you, Your Honor.

23  **THE COURT:**   Proceed.

24  Q    Now, the first person to be apprehended by law

25  enforcement was April Hampton?

Direct Examination of Kenneth Tootle by Mr. Bryan                24

1   A    I don't know if it was April Hampton or Ray Nelson, but
2   it was one or the other of those, and probably was April
3   Hampton.
4   Q    And April Hampton told the police that the shoes that
5   matched the footprints found at the crime scene weren't
6   hers, but her little sister's, right?
7   A    There was some question as to whose shoes the female
8   footprint was.
9   Q    And then later she admitted that those were her shoes?
10  A    Well, I think she maintained the whole time that they
11  were her sister's shoes, but that she was wearing them.
12  Q    Is there any evidence, other than the testimony of the
13  three other co-defendants, Mr. Nelson, Mr. Anthony Terez
14  Brown, and April Hampton; was there any evidence, eyewitness
15  testimony, forensic evidence, fingerprints, physical
16  objects, anything, other than the testimony of these three
17  people, that he was even around that day?  That he had any
18  connection with this crime?
19       **THE COURT:**  Refer to who "he" is, Mr. Bryan.
20  Q    By "he," I refer to Mr. Anthony Lamar Brown, our mutual
21  client.
22  A    The evidence, the physical evidence, that was obtained
23  and that would have been presented was overwhelming that a
24  murder had occurred.  The actual physical evidence itself
25  would not have been sufficient to convict Mr. Brown in my

Direct Examination of Kenneth Tootle by Mr. Bryan                25

1    opinion.

2    Q    Did your client, Mr. Anthony Lamar Brown, tell you of

3    any witnesses?

4    A    He did.

5    Q    Okay.  Did you investigate those witnesses?

6    A    We did.

7    Q    Did you interview those witnesses?

8    A    Some personally; some through a private investigator;

9    and some witnesses were not able to be obtained.

10   Q    And you had the private investigator?

11   A    Yes.

12   Q    And what did he find out?

13   A    The main thing we were working on with a private

14   investigator was to establish the alibi that Mr. Brown was

15   with his girlfriend, Ms. Taylor, at the time that the murder

16   was committed; or he was with his grandmother.  He was

17   either with Ms. Taylor, and he allegedly was with Ms. Taylor

18   and then left Ms. Taylor and went to his grandmothers, where

19   he lived.  He lived with his grandmother, a wonderful woman.

20   That was the information we were provided.  We attempted

21   diligently to locate Ms. Taylor.  She was not in the

22   Walterboro area.  We found some reason to believe that she

23   might be out in Sheldon.  A thorough investigation was

24   conducted there of Ms. Taylor.  Quite honestly, Ms. Taylor

25   was never located and we were not able to substantiate Mr.

Direct Examination of Kenneth Tootle by Mr. Bryan                    26

1    Brown being with Ms. Taylor because we were not able to
2    locate her.  We did substantiate that he was with his
3    grandmother.
4    Q    Okay.  So you don't remember much about the Sheriff's
5    Department investigation?
6    A    I think I remember a good bit about it, yes, sir.
7    Q    Huh?
8    A    Do I remember that the Sheriff investigated the case?
9    Q    Yeah.  The details.
10   A    Well, they had to investigate it in order to commence a
11   murder action against him.  Now, what they personally did, I
12   don't know.
13   Q    Okay.  But you didn't remember that Anthony T. Brown
14   took the officers to the pistol?
15   A    There were two pistols.
16   Q    Right.
17   A    There were two pistols.
18   Q    In the State, right.
19   A    One of them, as I understand, was never recovered.
20   Q    And the other was turned in by Anthony Terez Brown.
21   A    Was turned in.
22   Q    And the ---
23   A    And it seemed to me that that one that was turned in by
24   the other Mr. Brown would be one that would implicate the
25   other Mr. Brown.

64

| | |
|---|---|
| 1 | Q    Right. |
| 2 | A    Yes. |
| 3 | Q    Right. |
| 4 | **THE COURT:**  Indicate which Mr. Brown, Mr. Tootle. |
| 5 | **MR. TOOTLE:**  Not this Mr. Brown.  Not the Mr. Brown |
| 6 | we're here for today. |
| 7 | **THE COURT:**  Anthony Lamar Brown. |
| 8 | **MR. TOOTLE:**  Both of them are Anthony Brown's, Judge. |
| 9 | **THE COURT:**  One of them's Terez; one of them's Lamar. |
| 10 | **MR. TOOTLE:**  Yes. |
| 11 | A    It would implicate the Terez Brown. |
| 12 | **MR. BRYAN:**  I have no further questions of this |
| 13 | witness, Your Honor. |
| 14 | **THE COURT:**  Very well.  Cross examination? |
| 15 | **ASST. ATTY. GEN. FRIEDMAN:**  Thank you, Your Honor. |
| 16 | **CROSS-EXAMINATION** |
| 17 | BY ASST. ATTY. GEN. FRIEDMAN: |
| 18 | Q    Good morning, Mr. Tootle. |
| 19 | A    Good  morning. |
| 20 | Q    How long have you been practicing law? |
| 21 | A    I'm going on my 36th year.  His Honor and I were in law |
| 22 | school together. |
| 23 | Q    You were retained on this case; is that right? |
| 24 | A    I'm sorry? |
| 25 | Q    You were retained on this case? |

Direct Examination of Kenneth Tootle by Mr. Bryan                    28
Cross-Examination of Kenneth Tootle by Asst. Atty. Gen. Friedman

1    **A**    I was.

2    **Q**    Do you recall if you discussed the elements of the

3    charges?

4    **A**    Sir, can you speak a little plainer?

5         **THE COURT:**  Come up to the microphone.

6         **ASST. ATTY. GEN. FRIEDMAN:**  I'm sorry.

7    **Q**    During your meetings with him, do you recall if you

8    discussed the elements of the charges and what the State was

9    required to prove?

10   **A**    We discussed it many times.

11   **Q**    Did you discuss potential defenses?

12   **A**    We discussed many defenses.

13   **Q**    I believe you testified that one of those potential

14   defenses was alibi?

15   **A**    Alibi, yes.

16   **Q**    And you could not locate his girlfriend; is that right?

17   **A**    That is what I testified to.

18   **Q**    But you were able to talk to his grandmother?

19   **A**    Yes.

20   **Q**    Now, when he was with his grandmother, would that have

21   been at the same time this incident occurred?

22   **A**    There would be a window open there of time.  His

23   grandmother remembered specifically and was able to give us

24   the time that Anthony Lamar Brown was with her, because she

25   watches certain television shows and she said, "Well, this

Direct Examination of Kenneth Tootle by Mr. Bryan    29
Cross-Examination of Kenneth Tootle by Asst. Atty. Gen. Friedman

1  particular show was on," which if I recall, would have

2  placed it somewhere around 11:30.

3  Q    You testified that the physical evidence was not

4  sufficient, would probably not be sufficient to convict Mr.

5  Anthony Lamar Brown?

6  A    If that's all the evidence that there was, I don't

7  believe that would have convicted him, no.

8  Q    Did he understand that the three co-defendants would

9  have testified against him at trial?

10  A    There were three co-defendants, and all three

11  eventually were going to testify against him.  Initially,

12  April Hampton had made some confessions.  Her confessions

13  were subject to some serious cross-examination, because

14  actually, she had the same ending on all of them, but

15  getting there she had much inconsistencies in her

16  statements.  Ray Brown had given two statements -- no, no,

17  Ray Nelson had given two statements, and there were some

18  inconsistencies there.  The two Mr. Browns were not -- had

19  not given any statements all through the two years of

20  incarcerations.  And quite frankly, his attorney and I had

21  worked together in developing the trial strategy, and we

22  were ready and prepared to go to trial, and there were some

23  pretty serious Carroll doctrine situations that would help

24  our clients on that.  However, a week or maybe ten days

25  prior to the actual trial getting ready to commence, I was

Direct Examination of Kenneth Tootle by Mr. Bryan                30
Cross-Examination of Kenneth Tootle by Asst. Atty. Gen. Friedman

1    served notice from the Solicitor's Office that Anthony Terez
2    Brown had determined to become State's evidence, cop a plea
3    to lesser included.  And that did away with all the Carroll
4    doctrine strategies that we had.  That left a body of
5    evidence that was very very prejudicial to anybody accused.
6    It doesn't matter who would have been accused when they see
7    this poor woman with blood running down her and blood on the
8    little baby children.  She had two little children there.
9    The crime scene itself was a horrendous picture.  So the
10   evidence would have substantiated that this woman was
11   murdered, talking about physical evidence.  The pictures,
12   the other evidence that could have been presented was very
13   prejudicial.  It was very emotionally impacting.  And then,
14   if Mr. Brown was tied to that through the testimony of the
15   other three co-defendants, I'm afraid that there would have
16   no way for us to prevail.
17   Q    Okay.  And was this case ever on the trial docket?
18   A    Sure.  Actually, we -- the case was called for trial.
19   We proceeded to draw a jury on the case.  Quite frankly,
20   I've practiced law for 35 years now, and I've tried a good
21   many criminal cases, and this was, without a doubt, the
22   worst jury that I have ever drawn -- and when I say that,
23   there's no bad juries.  I don't mean to say that, Your
24   Honor.  But for if I'm attempting to get a "not guilty"
25   verdict, this jury would not have been one that I thought

Direct Examination of Kenneth Tootle by Mr. Bryan                    31
Cross-Examination of Kenneth Tootle by Asst. Atty. Gen. Friedman

1    would have been very receptive to that.  I felt real bad
2    about the jury.  We drew the jury on a Monday afternoon,
3    court recessed; we were getting ready to convene back on
4    Tuesday morning to commence with the first witness.  I went
5    in, as I always do, and spoke with my client just before
6    going to trial.  You know, everything, here it is.  This is
7    what we can expect to happen.  I had informed Mr. Brown for
8    probably a month before that that an offer of 40 years was
9    on the table.  I think we wanted to draw the jury just to
10   see maybe do we really want to give it a shot or not.  And
11   when we got back into the -- when I got back into the
12   holding area where Mr. Brown was being held, he informed me
13   then that he thought -- well, we did discuss the jury a
14   little bit, you know, had a tough draw there.  He did inform
15   me that he would like to go ahead and take the 40 years, and
16   as a result of that, I went back and announced to the Court
17   that we would like to change our plea.
18   Q    Okay.  This was a negotiated offer of 40 years for
19   murder?
20   A    It was.  It was.  The 30 years for armed robbery was
21   just kind of tag along.  It was thrown in there to run
22   concurrent with the 40 for murder.
23   Q    Whose decision was it to plead guilty?
24   A    It's ultimately my client's decision to plead guilty.
25   That decision is made by a client after -- certainly, I

 1  advised him what I thought our chances at trial were.  So

 2  did I have something to do with that decision?  I presume by

 3  him listening to my advice, that that had something to do

 4  with his decision.

 5      ASST. ATTY. GEN. FRIEDMAN:  I have nothing further,

 6  Your Honor.

 7      THE COURT:  Redirect?

 8      MR. BRYAN:  No further questions of this witness, Your

 9  Honor.

10      THE COURT:  As to this witness, any objection to the

11  witness being excused, Mr. Bryan?

12      MR. BRYAN:  No, Your Honor.

13      THE COURT:  Mr. Friedman, any objection to this witness

14  being excused?

15      ASST. ATTY. GEN. FRIEDMAN:  No, Your Honor.

16      THE COURT:  Mr. Tootle, you may step down and you are

17  excused from this hearing.

18      MR. TOOTLE:  Thank you, Judge.

19      THE COURT:  Call your next witness, Mr. Bryan.

20      MR. BRYAN:  We rest, Your Honor.

21      THE COURT:  Very well.  Mr. Friedman?

22      ASST. ATTY. GEN. FRIEDMAN:  The State has no witnesses,

23  Your Honor.

24      THE COURT:  Mr. Bryan, I'll be happy to hear you in

25  closing arguments.

70

1       **MR. BRYAN:**  Your Honor, we had testimony of the

2    Applicant that he had been in jail, only visited a few

3    times.  Details of the law were not fully explained to him

4    in appropriate detail and certain elements were not

5    mentioned at all.  The evidence, I think, in this case is

6    completely uncontradicted that he was never explained and he

7    had the right to be tried and found guilty.  That the burden

8    of proof was beyond a reasonable doubt or what that was.

9    That's uncontradicted.  I don't think it's in the

10   transcript.  It's based on his testimony.  No one denied it.

11   Furthermore, the ---

12       **THE COURT:**  Mr. Bryan, I've read the transcript, and I

13   believe those questions were asked to your client prior to

14   accepting the plea by Judge Mullen.  Is that not correct?

15       **MR. BRYAN:**  Well, the transcript speaks for itself,

16   Your Honor.  So, if I remember wrong, I remember wrong.

17       **THE COURT:**  Well, you were referring to Mr. Tootle in

18   your argument.

19       **MR. BRYAN:**  Right.

20       **THE COURT:**  But she goes over a number of things on

21   page 8, the bottom of 8, at line 20, and it goes through

22   page 9, line 23.  You have a copy of the transcript, don't

23   you?

24       **MR. BRYAN:**  Oh, yes.

25       **THE COURT:**  You were referring to the fact that she

1    goes over the presumption of innocence, important

2    constitutional rights, the right to remain silent,

3    opportunity to cross-examine the State's witnesses, suppress

4    possible evidence, certain constitutional rights.

5        MR. BRYAN:  But the burden of proof I didn't see in

6    there, Your Honor.

7        THE COURT:  All right.  Go ahead.

8        MR. BRYAN:  Furthermore, he said he had named witnesses

9    to his attorney, given him addresses, and when the time came

10   for this trial to come up, when it was called, he didn't see

11   his witnesses.  They weren't there.  And at that point, he

12   felt he had no choice.  We would just think under all the

13   circumstances in this case, Your Honor, that counsel at the

14   trial level has fallen short of the level of competency

15   required.  And that it has prejudiced him.  It forced him

16   into taking a plea of guilty when otherwise he would have

17   gone to a trial.  And for this reason, Your Honor, we would

18   request that the Court grant the relief requested in the

19   Application.

20       THE COURT:  Thank you, Mr. Bryan.  Mr. Friedman?

21       ASST. ATTY. GEN. FRIEDMAN:  Briefly, Your Honor, thank

22   you.  The State would submit that the Applicant has failed

23   to meet his burden.  The record would reflect that the plea

24   was entered freely, voluntarily, knowingly and

25   intelligently.  It was a negotiated sentence.  We would

72

35

1   submit that the record reflects that he had a full

2   understanding of the consequences of the plea. He was given

3   his right to a trial.  We also submit that counsel's

4   performance did not fall below an objective standard of

5   reasonableness.  He hired a private investigator and tried

6   to locate all the witnesses that the Applicant gave him.

7   They were trying to establish an alibi defense, and

8   ultimately, they could not substantiate that defense.  We

9   would ask that you deny this Application.

10       **THE COURT:**  Very well.  I'm going to ask both sides to

11   submit proposed Orders to me.  Please submit them to me

12   within 30 days of today.  Please submit them to me at P. O.

13   Drawer 470, Walterboro, 29488.  That's P. O. Drawer 470,

14   Walterboro, South Carolina, 29488.

15       Please copy opposing counsel on your transmittal of any

16   proposed Orders to the Court.  I'll be happy for you to e-

17   mail me your Order to comply with the time deadline, but I'm

18   going to require that you enclose with your Order, a self-

19   addressed, stamped envelope with sufficient postage affixed

20   thereto.  So, you're going to have to ultimately mail your

21   Order to me even if you e-mail me to comply with the time so

22   that you can send me an envelope with sufficient postage.

23       If you e-mail me, I request that you e-mail me at

24   pbucknerj@sccourts.org.  Anything that you e-mail me, I ask

25   that you copy opposing counsel on.  I also ask as a courtesy

1    that you e-mail my law clerk a copy.  His e-mail is

2    pbucknerlc@sccourts.org.  If you're just going to mail me by

3    United States Mail, please also provide a working copy of

4    your proposed Order to my law clerk.  Obviously, any

5    communication directed to the Court in connection with this

6    matter, please always copy opposing counsel.

7         Any questions about the proposed Order procedure from

8    the State of South Carolina?

9         **ASST. ATTY. GEN. FRIEDMAN:**  No, Your Honor.

10        **THE COURT:**  Any questions about the proposed Order

11   procedure from counsel for the Applicant?

12        **MR. BRYAN:**  No, Your Honor.

13        **THE COURT:**  All right.  Let the record reflect, that I

14   will be taking back to my chambers in connection with this

15   matter, which I've reviewed, the transcript, the

16   indictments, the sentence sheet, the Application for Post-

17   Conviction Relief, as well as the Return of the State of

18   South Carolina.  I also have, Mr. Friedman, the Opinion that

19   was published by the Court of Appeals in connection with the

20   Anders Brief, and I also have the final Anders Brief of the

21   Appellant in my packet.  Is there any additional information

22   which counsel for the Applicant feels is necessary in order

23   for the Court to make an informed decision that has not

24   already been presented into evidence at this time, Mr.

25   Bryan?

74

37

1    **MR. BRYAN:**  No, Your Honor.

2    **THE COURT:**  Any additional information that the State

3  feels the Court needs in order to make an informed decision?

4    **ASST. ATTY. GEN. FRIEDMAN:**  No, Your Honor.

5    **THE COURT:**  Very well.  The record is now closed in

6  connection with this hearing.  I look forward to getting

7  your proposed Orders.  Thank you very much.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF SOUTH CAROLINA  )
                         )        ·        CERTIFICATE
COUNTY OF COLLETON    ·   )


    I, REBECCA H. HILL, Official Court Reporter for the Judicial Department of the State of South Carolina, do hereby certify that the foregoing is a true, accurate and complete Transcript of Record of the proceedings had in the hearing of the captioned case, in the Court of Common Pleas, Post-Conviction Relief Hearings, for Colleton County, South Carolina, on the 3rd day of September 2010.

    I do further certify that I am neither of kin, counsel, nor interest to any party hereto.

                       August 9, 2011


                       _Rebecca H Hill_
                       Rebecca H. Hill,
                       Official Court Reporter

76

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF COLLETON | ) | 2008-CP-15-1038 |
| Anthony Lamar Brown, #251490, | ) | |
| Applicant, | ) | |
| v. | ) | ORDER OF DISMISSAL |
| State of South Carolina, | ) | |
| Respondent. | ) | |

This matter comes before the Court by way of an application for post-conviction relief (PCR) filed November 6, 2008. The Respondent made its Return on March 20, 2009. An evidentiary hearing into the matter was convened on September 3, 2010 at the Colleton County Courthouse. The Applicant was present at the hearing and was represented by J.D. Bryan, Esquire. Matthew J. Friedman, Esquire, of the South Carolina Attorney General's Office represented the Respondent.

Applicant testified on his own behalf at the PCR hearing. Applicant's plea counsel, Kenneth Tootle, Esquire, testified at the hearing. Jamal Washington and Leonard Stanfield also testified at the hearing. This Court had before it the records of the Colleton County Clerk of Court, Applicant's records from the South Carolina Department of Corrections, the Record on Appeal, the Final <u>Anders</u> Brief, the Court of Appeals' Opinion dismissing the direct appeal, the Remittitur dated July 29, 2008, the PCR application, and Respondent's Return thereto.

## PROCEDURAL HISTORY

The Applicant is presently confined in the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Colleton County. The Applicant was indicted at the July 2004 term of the Colleton County Grand Jury for murder (2004-GS-15-420)

and armed robbery (2004-CP-15-421). Kenneth L. Tootle, Esquire, represented the Applicant. On March 13, 2007, the Applicant pled guilty as indicted. Pursuant to a negotiated plea agreement, the Honorable Carmen T. Mullen sentenced the Applicant to confinement for forty (40) years for murder and thirty (30) years for armed robbery. The sentences were to run concurrently.

A timely Notice of Appeal was filed on Applicant's behalf and an appeal was perfected. Robert M. Pachak, Esquire, of the South Carolina Office of Appellate Defense, filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). The South Carolina Court of Appeals dismissed the appeal. <u>State v. Brown</u>, Op. No. 2008-UP-365 (S.C. Ct. App. filed July 11, 2008). The Remittitur was issued July 29, 2008.



## **ALLEGATIONS**

The Applicant alleges he is being held in custody unlawfully for the following reasons:

1.    Ineffective assistance of counsel in that counsel
   a.    Failed to subpoena witnesses known at the time of the guilty plea.
   b.    Failed to properly investigate and interview witnesses.
   c.    Failed to suppress insufficient warrants/indictments and Grand Jury panel.
   d.    Failed to communicate.
   e.    Failed to advise defendant of rights/consequences of pleading guilty.
   f.    Failed to make specific <u>Brady</u> requests that violated due process.
   g.    Knowingly and willfully withheld evidence that deprived Applicant of his right to due process.
   h.    Performance fell below an objective standard of reasonableness.
   i.    Failed to comply with mandate set forth in advising the voluntariness of guilty plea phase.

2.    Prosecutorial misconduct in that prosecution failed to disclose agreements made by co-defendants and witnesses.

3.    Plea judge abused discretion in failing to ensure that Applicant's plea was freely and voluntarily entered and failing to give Applicant a complete competency test.

78

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing.  This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility.  This Court has weighed the testimony accordingly.  Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

Applicant testified that he met with counsel about three or four times prior to the plea. He asserted that he told counsel about several potential witnesses, including Jamal Washington, Leonard Stanfield, Jermaine Glover, and Leslie Taylor.  He testified that these witnesses would have testified that the victim's family was going to blame Applicant even though they did not know who killed her.  Applicant asserted that counsel hired a private investigator, but the investigator did not find out anything.

Jamal Washington testified that he used to work with Applicant at the company that was robbed.  He asserted that the victim's husband and son approached him a few days after the murder to see if he had anything to do with it or if he had seen Applicant.

Leonard Stanfield testified that he was in jail with one of Applicant's co-defendants, Anthony Terez Brown.  He asserted that he overheard a conversation between Anthony Terez Brown and someone else, but Applicant's name was not mentioned.

Plea counsel testified that he represented Applicant for about two to two and a half years. He testified that Applicant gave him the names and they were able to locate most of these witnesses. Counsel asserted that they were trying to establish an alibi defense that Applicant was

3

with his girlfriend or his grandmother at the time of the murder, but they could not locate his girlfriend and they could not substantiate that he was with his grandmother at the time of the murder as there was an open window of time. Counsel asserted that there was not sufficient physical evidence to convict Applicant, but the three co-defendants would have testified against Applicant at trial and it would have been an emotional trial based on the horrendous crime scene.

Counsel testified that the State made an offer for forty (40) years before trial. He asserted that the offer was still on the table when they selected a jury. After the jury was drawn, Applicant informed counsel that he wanted to plead guilty. Counsel testified that he explained the significance of a negotiated sentence and the consequences of pleading guilty. Counsel testified that he was prepared to go to trial if Applicant had elected to continue with the trial.

### Ineffective Assistance of Counsel

The Applicant alleges that he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668 (1984); Butler, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. Cherry, 386 S.E.2d 624.

80

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Id. at 625 (citing Strickland, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 625. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997).

This Court finds that Applicant's testimony was not credible while also finding counsel's testimony was credible. This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on numerous occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's constitutional rights, Applicant's version of the facts, and possible defenses or lack thereof.

The record reflects that Applicant understood the nature of the charges and the possible punishments. At the plea hearing, he indicated that he was satisfied with counsel and that no one threatened him or promised him anything to get him to plead guilty. He admitted guilt at the plea hearing. This Court finds that Applicant's plea was entered voluntarily and intelligently with a full understanding of the consequences. This Court finds that Applicant understood the terms of the negotiated sentence and that it was Applicant's decision to plead guilty.

Regarding Applicant's claims of ineffective assistance of counsel, this Court finds Applicant has failed to meet his burden of proof. This Court finds that Applicant's attorney demonstrated the normal degree of skill, knowledge, professional judgment, and representation

5

that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds that counsel properly reviewed the evidence with Applicant, informed Applicant of the applicable sentencing ranges for these offenses, and explained the consequences of the plea to Applicant. This Court finds that counsel obtained a favorable result for Applicant considering that Applicant was facing exposure of confinement for life plus thirty (30) years. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

This Court finds that counsel properly contacted the witnesses that Applicant provided to him. Counsel testified that none of the witnesses could substantiate an alibi defense for Applicant. This Court finds that counsel was not ineffective for failing to subpoena witnesses for the guilty plea hearing. Counsel would have subpoenaed any witnesses that he believed were necessary for trial if Applicant had elected to go to trial.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in his representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by plea counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

82

## All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his guilty plea and sentencing proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this application for PCR must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of written notice of entry of this Order to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely served and filed.

**IT IS THEREFORE ORDERED:**

1. That the application for post-conviction relief be denied and dismissed with prejudice; and

2. That the Applicant be remanded to the custody of the Respondent.

**AND IT IS SO ORDERED** this _18_ day of _November_, 2010.

Perry M. Buckner
Presiding Judge
14th Judicial Circuit

_Walterboro_, South Carolina.

03:54:45 p.m.    11-16-2011    1/2

84 734 4113

STATE OF SOUTH CAROLINA                    )       IN THE _Court of Common Pleas_

COUNTY OF _Colleton_                        )            CASE NO.
_Anthony L. Brown_                          )
☑ Plaintiff                                 )       _2008_ · _CP_ · _15_ · _1038_
                                            )
              v.                            )       MOTION AND ORDER INFORMATION
_State of South Carolina_                   )       FORM AND COVER SHEET
☐ Defendant.                                )

| Plaintiff's Attorney: | Defendant's Attorney: |
|---|---|
| _J. P. Bryan_ , Bar No. _5833_ | _Matt Friedman_ , Bar No. ____ |
| Address: _P.O. Box 1111_ | Address: _P.O. Box 11549_ |
| _Walterboro, SC  29488_ | _Columbia, SC  29211_ |
| phone: _843-549-3455_ fax: | phone: _803-734-3770_ fax: |
| e-mail: ____ her. | e-mail: ____ her. |

☑ **MOTION HEARING REQUESTED (attach written motion and complete SECTIONS I and III)**
☐ **FORM MOTION, NO HEARING REQUESTED (complete SECTIONS II and III)**
☐ **PROPOSED ORDER/CONSENT ORDER (complete SECTIONS II and III)**

### SECTION I: Hearing Information

Nature of Motion: _59 (e)_
Estimated Time Needed: _10 minutes_        Court Reporter Needed: ☑ YES / ☐ NO

### SECTION II: Motion/Order Type

☐ Written motion attached
☐ Form Motion/Order
  I hereby move for relief or action by the court as set forth in the attached proposed order.



_____          _____
Signature of Attorney for ☐ Plaintiff / ☐ Defendant     Date submitted

### SECTION III: Motion Fee

☐ PAID – AMOUNT: ____
☑ EXEMPT: ☐ Rule to Show Cause in Child or Spousal Support
(check reason) ☐ Domestic Abuse or Abuse and Neglect
☐ Indigent Status    ☐ State Agency v. Indigent Party
☐ Sexually Violent Predator Act    ☑ Post-Conviction Relief
☐ Motion for Stay in Bankruptcy
☐ Motion for Publication    ☐ Motion for Execution (Rule 69, SCRCP)
☐ Proposed order submitted at request of the court; or,
     reduced to writing from motion made in open court per judge's instructions
     Name of Court Reporter: ____
☐ Other: ____

_PATRICIA C. GRANT COLLETON COUNTY COMMON PLEAS_
_2010 NOV 30  AM 10: 49_

### JUDGE'S SECTION

☐ Motion Fee to be paid upon filing of the attached order.
☐ Other: ____

JUDGE ____

CODE: ____    Date: ____

### CLERK'S VERIFICATION

Date Filed: ____

Collected by: ____

☐ MOTION FEE COLLECTED: ____
☐ CONTESTED – AMOUNT DUE: ____

SCCA/233 (11/03)

| | |
|---|---|
| State of South Carolina, | In the Court of Common Pleas. |
| County of Colleton. | Case No. 2008-CP-15-1038. |
| Anthony L. Brown, #251490, | |
| Applicant , | Motion. |
| v. | |
| The State of South Carolina, | |
| Respondent. | |

Applicant moves the court to alter or amend the judgment heretofore entered in thi action, insofar as said judgment fails to address the issue of the effectiveness of counsel on the ground that Applicant was not informed about the meaning of reasonable doubt, nor was he informed that the burden of proof that the State would have to meet at the trial of the case was proof beyond a reasonable doubt.

Counsel for the Applicant affirms that he spoke with Counsel for the Respondent and attempted in good faith to resolve the matter in the motion, who recommended a 59 (e) motion.

...................................
Attorney for Petitioner.
J.D. Bryan
P.O. Box 1111
209 East Washington Street
Walterboro, S.C.  29488
(843)-549-9455.

Tue, Nov 30, 2010.

2010 NOV 30  AM 11:49
PATRICIA C. GRANT
COLLETON COUNTY
COMMON PLEAS

86

STATE OF SOUTH CAROLINA            )            IN THE COURT OF COMMON PLEAS

COUNTY OF COLLETON                 )            2008-CP-15-1038

                                   )

Anthony Lamar Brown, #251490,      )

                    Applicant,     )

                                   )

          v.                       )            AMENDED ORDER OF DISMISSAL

                                   )

State of South Carolina,           )

                    Respondent.    )

This matter comes before the Court by way of Applicant's Motion to Alter or Amend pursuant to Rule 59, SCRCP, dated November 30, 2010. This Court issued an Order of Dismissal dated November 18, 2010 and filed on November 22, 2010. This Amended Order of Dismissal will supplement this Court's prior Order of Dismissal.

The Applicant contends that certain allegations raised at the evidentiary hearing were not adequately addressed in the Order of Dismissal, specifically ineffective assistance of counsel in that counsel did not explain the meaning of reasonable doubt and failed to inform Applicant that the State would have to prove its case beyond a reasonable doubt. This Court will now address the allegations.

This Court has considered Applicant's allegations of ineffective assistance of counsel in that counsel did not explain the meaning of reasonable doubt and failed to inform Applicant that the State would have to prove its case beyond a reasonable doubt. This Court finds that counsel properly explained to Applicant the elements of each offense and what the State was required to prove. Moreover, the plea court put on the record that the State was required to prove Applicant's guilt beyond a reasonable doubt. This Court finds that counsel informed Applicant

of his constitutional rights, including his right to a jury trial. In fact, Applicant proceeded to trial and then elected to plead guilty. This Court finds that Applicant has failed to meet his burden of showing that counsel was deficient; thus, all allegations regarding ineffective assistance of counsel are hereby denied and dismissed.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes Applicant has not established any constitutional violations or deprivations before or during his plea and sentencing proceedings. Counsel was not deficient in any manner, nor was Applicant prejudiced by counsel's representation. Thus, the application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of written notice of entry of this Order to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely served and filed.

**IT IS THEREFORE ORDERED:**

1. That the application for post-conviction relief be denied and dismissed with prejudice; and
2. That the Applicant be remanded to the custody of the Respondent.

**AND IT IS SO ORDERED** this 17 day of December, 2010.

Perry M. Buckner
Presiding Judge
14th Judicial Circuit

Walterboro, South Carolina.

2

**ARREST WARRANT**

**G-308170**

**STATE OF SOUTH CAROLINA**

[X] County/ [ ] Municipality of
COLLETON COUNTY

**THE STATE**

against

BROWN, ANTHONY L.

Address:
WALTERBORO, SC

Phone: ___ SSN: ___
Sex: ___ Race: B Height: 5'11" Weight: 190
State: ___ DL #: ___
DOB: ___ Agency ORI #: ___
Prosecuting Agency: ___
Prosecuting Officer: ___
Offense: MURDER
Offense Code: 0116
Code/Ordinance Sec. 16-3-10

This warrant is **CERTIFIED FOR SERVICE** in the [ ] County/ [ ] Municipality of ___. The accused is to be arrested and brought before me to be dealt with according to law.

_____ (L.S.)
Signature of Judge

Date: ___

**RETURN**

A copy of this arrest warrant was delivered to defendant BROWN, ANTHONY L.
on 5-12-04

_____
Signature of Constable/Law Enforcement Officer

**RETURN WARRANT TO:**
K. O. CAMPBELL, JR.
P.O. BOX 1732/40-B KLEIN
WALTERBORO, SC 29488 0

---

Form Approved by
SC Attorney General
July 26, 1990
SCCA 518

**AFFIDAVIT**

**STATE OF SOUTH CAROLINA** )
[X] County/ [ ] Municipality of )
COLLETON COUNTY )

Personally appeared before me the affiant DET. HAMPION JENKINS who being duly sworn deposes and says that defendant NELSON, RAYE on 04/13/04 did within this county and state on ___ violate the criminal laws of the State of South Carolina (or ordinance of [ ] County/ [ ] Municipality of COLLETON )
in the following particulars:

**DESCRIPTION OF OFFENSE:** MURDER
16-3-10

I further state that there is probable cause to believe that the defendant named above did commit the crime set forth and that probable cause is based on the following facts:
THAT ON APRIL 13, 2004 AT MALONEY CONCRETE, LOCATED AT 1765 ACORN ST., WALTERBORO, SC IN THE COUNTY OF COLLETON ONE APRIL HAMPTON, ANTHONY L. BROWN, AND RAYE NELSON DID SHOOT AND KILL CAROLYN MALONEY WHILE COMMITTING AN ARMED ROBBERY. PROBABLE CAUSE IS BASED ON WITNESS STATEMENTS. ALL OF THIS BEING IN VIOLATION OF SC CRIMINAL CODE OF LAWS. OCA #04-1466

Sworn to and subscribed before me )
on MAY 05, 2004 )
)
_____ (L.S.) )
Signature of Issuing Judge

Signature of Affiant    D316
Affiant's Address    119 BENSON ST., C.C.S.D.
WALTERBORO, SC 29488
Affiant's Telephone    843 549-0711    770-0008

---

**STATE OF SOUTH CAROLINA** )
[X] County/ [ ] Municipality of )
COLLETON )

**ARREST WARRANT**

**TO ANY LAW ENFORCEMENT OFFICER OF THIS STATE OR MUNICIPALITY OR ANY CONSTABLE OF THIS COUNTY:**

It appearing from the above affidavit that there are reasonable grounds to believe that on 04/13/04 defendant BROWN, ANTHONY L. did violate the criminal laws of the State of South Carolina (or ordinance of [X] County/ [ ] Municipality of COLLETON ) as set forth below:

**DESCRIPTION OF OFFENSE:** MURDER
16-3-10

Now, therefore, you are empowered and directed to arrest the said defendant and bring him or her before me forthwith to be dealt with according to law. A copy of this Arrest Warrant shall be delivered to the defendant at the time of its execution, or as soon thereafter as is practicable.

_____ (L.S.)
Signature of Issuing Judge

K. O. CAMPBELL, JR.

Judge's Address    P.O. BOX 1732/40-B KLEIN
WALTERBORO, SC 29488
Judge's Telephone    843 549-1132

Issuing Court: [X] Magistrate  [ ] Municipal  [ ] Circuit

**ORIGINAL**

89

**ARREST WARRANT**

**G-308171**

**STATE OF SOUTH CAROLINA**

[X] County/ [ ] Municipality of
COLLETON COUNTY

### THE STATE
against

BROWN, ANTHONY L.

Address: WALTERBORO, SC

Phone: _____ SSN: _____

Sex: M Race: B Height: 5'11" Weight: 100

____ State: ____ DL #: _____

DOB: _____ Agency ORI #: _____

Prosecuting Agency: _____

Prosecuting Officer: _____

Offense: ARMED ROBBERY

Offense Code: 0139

Code/Ordinance Sec. 16-11-330

This warrant is **CERTIFIED FOR SERVICE** in the
County/ [ ] Municipality of

_____. The accused
is to be arrested and brought before me to be
dealt with according to law.

_____ (L.S.)
Signature of Judge

te: _____

### RETURN

A copy of this arrest warrant was delivered to
defendant BROWN, ANTHONY L.
on 5-12-04

Signature of Constable/Law Enforcement Officer

**RETURN WARRANT TO:**
K. A. CAMPBELL, JR.
P.O. BOX 1732/40-B KLEIN
WALTERBORO, SC 29488 0

---

**STATE OF SOUTH CAROLINA** )
[X] County/ [ ] Municipality of )
COLLETON COUNTY )

Form Approved by
S.C. Attorney General
July 26, 1990
SCCA 518

**AFFIDAVIT**

Personally appeared before me the affiant DET. HAMPTON JENKINS who
being duly sworn deposes and says that defendant BROWN, ANTHONY L.
did within this county and state on 04/13/04 violate the criminal laws of the
State of South Carolina (or ordinance of [X] County/ [ ] Municipality of COLLETON )
in the following particulars:
**DESCRIPTION OF OFFENSE:** ARMED ROBBERY
16-11-330

I further state that there is probable cause to believe that the defendant named above did commit
the crime set forth and that probable cause is based on the following facts:
THAT ON APRIL 13, 2004 AT MALONEY CONCRETE, LOCATED AT 1065 FORDN RD.,
WALTERPORO, SC AND IN THE COUNTY OF COLLETON ONE ANTHONY L. BROWN, ANTHONY
T. BROWN DID ENTER THE BUSINESS AND ROB AND KILL THE VICTIM, CAROLYN
MALONEY. BOTH DEFENDANTS WERE ARMED WITH HANDGUNS DURING THE COMMISSION OF
THIS CRIME. PROBABLE CAUSE IS BASED ON A SELF-INCRIMINATING STATEMENT BY A
CO-DEFENDANT AND EVIDENCE FROM THE CRIME RECEIVED FROM CO-DEFENDANTS. ALL
THIS BEING IN VIOLATION OF SC CRIMINAL CODE OF LAWS. DCC #04-1466

Sworn to and subscribed before me )
on MAY 05, 2004 )
                                   )
_____ (L.S.) )
Signature of Issuing Judge )

Signature of Affiant _____ △316
Affiant's Address 119 BENSON ST. C.C.S.D.
WALTERBORO, SC 22488
Affiant's Telephone 843 549-7211 700-2003

**STATE OF SOUTH CAROLINA** )
[X] County/ [ ] Municipality of )
COLLETON )

**ARREST WARRANT**

**TO ANY LAW ENFORCEMENT OFFICER OF THIS STATE OR MUNICIPALITY OR ANY CONSTABLE OF THIS COUNTY:**

It appearing from the above affidavit that there are reasonable grounds to believe that
on 04/13/04 defendant BROWN, ANTHONY L.
did violate the criminal laws of the State of South Carolina (or ordinance of
[X] County/ [ ] Municipality of COLLETON ) as set forth below:
**DESCRIPTION OF OFFENSE:** ARMED ROBBERY
16-11-330

Now, therefore, you are empowered and directed to arrest the said defendant and bring him or her before
me forthwith to be dealt with according to law. A copy of this Arrest Warrant shall be delivered to the
defendant at the time of its execution, or as soon thereafter as is practicable.

                                   )
_____ (L.S.) )
Signature of Issuing Judge )
Judge Code: 1875 )
K. A. CAMPBELL, JR.

Judge's Address P.O. BOX 1732/40-B KLEIN
WALTERBORO, SC 29488 0
Judge's Telephone 843 549-1122

Issuing Court: [ ] Magistrate [ ] Municipal [ ] Circuit

**ORIGINAL**

90

STATE OF SOUTH CAROLINA   )
                          )    INDICTMENT #04GS15-0420
County of Colleton        )

   At a Court of General Sessions, convened on July 19, 2004,
the Grand Jurors of Colleton County present upon their oath:

        COUNT:                    MURDER
                                  16-3-20

   That Anthony L. Brown did in Colleton County on or about April 13, 2004,

feloniously, wilfully and with malice aforethought, kill one Carolyn Maloney by

means of shooting her and that the said Carolyn Maloney did die in Colleton

County as a proximate result thereof on or about the 13th day of April, 2004.


   Against the peace and dignity of the State, and contrary to the statute

in such case made and provided.

                      SOLICITOR   _____

WITNESSES

Det. Hampton Jenkins

SSgt. Lesley Jamison

ARREST WARRANT #:

G308170

Arrested on May 12, 2004

ACTION OF GRAND JURY

*Tru Beil*

Foreman:

Grand Jury

VERDICT

Foreman:

Petit Jury
Date:

DOCKET #: 04GS15-0420

THE STATE OF SOUTH CAROLINA
County of Colleton

COURT OF GENERAL SESSIONS

Term: July, 2004

THE STATE

vs.

Anthony L. Brown

INDICTMENT FOR

0115

MURDER

16-3-20

92

STATE OF SOUTH CAROLINA  )
                         )    **INDICTMENT  #04GS15-0421**
County of Colleton       )

    At a Court of General Sessions, convened on July 19, 2004,
the Grand Jurors of Colleton County present upon their oath:

        COUNT:                ARMED ROBBERY
                         (16-11-330)

    That Anthony L. Brown did in Colleton County on or about April 13, 2004,

while armed with a deadly weapon, or while alleging or representing, by action

or words, that he/she was armed with a deadly weapon, or other object that a

person present, reasonably believed to be a deadly weapon, to wit: a handgun,

feloniously take from the person or presence of the victim, Carolyn Maloney, by

means of force or intimidation goods or monies of said victim, such goods or

monies being described as follows: *purse, bank bag, diaper bag ( VMC )*

    Against the peace and dignity of the State, and contrary to the statute

in such case made and provided.

                SOLICITOR _Randolph Murdaugh_

7344113

**WITNESSES**

Det. Hampton Jenkins

SSgt. Lesley Jamison

**ARREST WARRANT #:**

G308171

Arrested on May 12, 2004

**ACTION OF GRAND JURY**

_True Bill_

Foreman: ▮▮▮▮▮▮▮
Grand Jury

**VERDICT**

Foreman: 
Petit Jury
Date: 

---

DOCKET #: 04GS15-0421

THE STATE OF SOUTH CAROLINA
County of Colleton

COURT OF GENERAL SESSIONS

Term: July, 2004

▬▬▬▬▬▬▬

THE STATE

vs.

Anthony L. Brown

▬▬▬▬▬▬▬

**INDICTMENT   FOR**

0139

ARMED ROBBERY

(16-11-330)

94

Mon. Tues.

**COLLETON COUNTY**

**COURT OF GENERAL SESSIONS**

alternate
# 1
1 S
2 D

# 2
1 S
2 D

**DATE:** 3-12-07      **CASE NO:** 2004 - GS-15-420
2004 - GS-15-421

55 l
10 D

**STATE VS** Anthony L. Brown

**INDICTMENT FOR** Murder and Armed Robbery

**ATTORNEY FOR STATE:** T. K. Alexander

**ATTORNEY FOR DEFENDANT:** Kenneth Tootle

**JURORS SERVING:**

| 52 | 1. | 7. |
| 78 | 2. | 8. |
| 37 | 3. | 9. |
| | 4. | 10. |
| | 5. | 11. |
| | 6. | 12. |

**ALTERNATE JUROR:**
# 2

**State**           **WITNESSESES;**           **Defense**

Defendant Pled Guilty before
Jurors were Sworn 3/13/07

**Case Sent to Jury:** _____      **VERDICT RENDERED:** _____

**VERDICT**

_Carmen T. Mullen_                    _Mia Person_
**Presiding Judge**                    **Court Reporter**