ORIGINAL

```
STATE OF SOUTH CAROLINA      )   COURT OF GENERAL SESSIONS
                             )   FOURTEENTH JUDICIAL CIRCUIT
COUNTY OF COLLETON           )


STATE OF SOUTH CAROLINA      )
                             )
VS.                          )   Indictment No.:
                             )   2004-GS-15-0420/0421
ANTHONY L. BROWN,            )
                             )
        DEFENDANT.           )
_____)
```

**PLEA**

held before the Honorable Carmen T. Mullen

Mia Perron, Official Court Reporter, 14th Judicial Circuit

in the Colleton County Courthouse

Walterboro, South Carolina

on Tuesday, March 13, 2007, Commencing at 9:57 a.m.

**SUSAN "MIA" PERRON, CCR, CVR-CM**
*Circuit Court Reporter - 14th Judicial Circuit*
Post Office Box 2865
Bluffton, South Carolina 29910
1-706-231-6028

FORM C-100 · LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

## INDEX

INDEX ............................................................................................................... i

TRIAL TRANSCRIPT ........................................................................................ 1

INDICTMENTS ............................................................................................. 26

CERTIFICATE OF APPELLANT .................................................................... 30

APPEARANCES OF COUNSEL

FOR THE STATE:        Terry K. Alexander, Esquire
                        14th Circuit Solicitor's Office
                        Post Office Box 620
                        Walterboro, South Carolina  29488


FOR THE DEFENDANT:    Kenneth L. Tootle, Esquire
                        Attorney at Law
                        Post Office Box 1321
                        Beaufort, South Carolina  29901

FORM C-100 - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

MIA PERRON, CCR, CVR-CM                 -2-

INDEX TO PROCEEDINGS

*STATE V. ANTHONY L. BROWN*

|                              | PAGE |
|------------------------------|------|
| PROCEEDINGS                  | 4    |
| CERTIFICATE OF COURT REPORTER | 25   |

- - - -

EXHIBITS

[None]

State v. Anthony L. Brown
Plea
3/13/07

1                           PROCEEDINGS

2          THE COURT:  Solicitor.

3          MR. ALEXANDER:  Please the Court.  Your Honor, I

4    have been informed that the defendant, Anthony Lamar

5    Brown, wishes to change his plea from not guilty to

6    guilty.  I've handed up the sentencing sheets.  He is

7    present, along with his attorney, Ken Tootle.

8          THE COURT:  All right.  Please have Mr. Brown

9    come forward.

10         Mr. Tootle, have you explained, and does Mr.

11   Brown understand, the charges against him, the possible

12   punishment, and his constitutional rights?

13         MR. TOOTLE:  Your Honor, we've explained those

14   in detail, and he does understand.

15         THE COURT:  Thank you, sir.  Does Mr. Brown wish

16   to plead guilty to the murder charge and armed robbery

17   charge, sir?

18         MR. TOOTLE:  Yes, Your Honor, he does.

19         THE COURT:  Is that correct, Mr. Brown?

20         MR. BROWN:  Yes, ma'am.

21         THE COURT:  All right.  Sir, based on your

22   investigation, Mr. Tootle, does the State have adequate

23   evidence to prove his guilt on these two charges beyond

24   a reasonable doubt, sir?

25         MR. TOOTLE:  I believe the State does possess

MIA PERRON, CCR, CVR-CM                              -4-

State v. Anthony L. Brown
Plea
3/13/07

1       that evidence, Your Honor.

2               THE COURT:  Mr. Brown, how old are you, sir?

3               MR. BROWN:  Twenty-five.

4               THE COURT:  How far did you go in school?

5               MR. BROWN:  Graduated.

6               THE COURT:  High school?

7               MR. BROWN:  Yes, ma'am.

8               THE COURT:  What type of work do you do, sir?

9               MR. BROWN:  The last work I did was concrete,

10      before I came in.

11              THE COURT:  All right.  Sir, are you married?

12              MR. BROWN:  Single.

13              THE COURT:  Do you have any children?

14              MR. BROWN:  None.

15              THE COURT:  All right.  Sir, have you taken any

16      medication or drank any alcohol in the last twenty-four

17      hours?

18              MR. BROWN:  No.

19              THE COURT:  Do you suffer from any mental or

20      physical infirmity that would prevent you from

21      understanding what we are doing here today?

22              MR. BROWN:  No.

23              THE COURT:  All right.  Sir, the first

24      indictment is for armed robbery.  It is indictment

25      number 2004-GS-15-421.  This indictment states that you

MIA PERRON, CCR, CVR-CM                                    -5-

State v. Anthony L. Brown
Plea
3/13/07

1    did in Colleton County on or about April 13th of 2004,

2    while armed with a deadly weapon, a handgun, take from

3    the person or presence of the victim, a Ms. Carolyn

4    Maloney, by means of force or intimidation, goods or

5    monies belonging to Ms. Maloney, and it's described in

6    the indictment as a purse, a bank bag, and a diaper

7    bag, sir.  Do you understand the charge contained in

8    the indictment?

9         MR. BROWN:  Yes, I do.

10         THE COURT:  How do you wish to plead to it, sir?

11         MR. BROWN:  Guilty.

12         THE COURT:  Sir, are you pleading guilty to this

13    charge because you are, in fact, guilty?

14         MR. BROWN:  [No response]

15         MR. ALEXANDER:  Your Honor, excuse me.  I failed

16    -- this is negotiated for a forty-year sentence on the

17    murder charge and thirty years concurrent on the armed

18    robbery.  We've indicated that on the plea sheet, but I

19    failed to mention it when I called it.

20         THE COURT:  That's all right.

21         Mr. Brown, let me just explain that to you.

22    Because it is a negotiated sentence between the

23    solicitor's office and your attorney, I have no choice

24    to either -- I can only accept it or reject it.  In

25    other words, I can't give you any other sentence than

MIA PERRON, CCR, CVR-CM                                    -6-

State v. Anthony L. Brown
Plea
3/13/07

1   what your two -- the solicitor's office and your

2   attorney have negotiated this to.  So, sir, if for any

3   reason I hear the facts of this case, if I decide for

4   some reason I can't follow the negotiation, I will tell

5   your attorney and I will allow you to withdraw the

6   plea.  Okay, sir?  Do you understand that?

7        MR. BROWN:  Yes, ma'am.

8        THE COURT:  All right, sir.  Sir, the second

9   indictment is indictment number 2004-GS-15-420.  It is

10   a charge for murder.  This indictment states that you

11   did in Colleton County on or about April 13th of 2004

12   feloniously, willfully, and with malice aforethought

13   kill Ms. Carolyn Maloney by means of shooting her and

14   that she did, in fact, die in Colleton County as a

15   proximate result of that gunshot on the 13th day of

16   April, 2004.

17        Sir, do you understand the charge contained in

18   this indictment?

19        MR. BROWN:  Yes, I do.

20        THE COURT:  And how do you wish to plead to it,

21   sir?

22        MR. BROWN:  Guilty.

23        THE COURT:  And are you pleading guilty, sir, to

24   this charge because you are, in fact, guilty?

25        MR. BROWN:  Yes, ma'am.

MIA PERRON, CCR, CVR-CM                                    -7-

State v. Anthony L. Brown
Plea
3/13/07

1        THE COURT:  Mr. Brown, you need to understand

2     that while the solicitor's office has negotiated, as we

3     said, a forty-year sentence for the murder charge and a

4     thirty-year sentence for the armed robbery charge, the

5     two of them to run concurrent, which means at the same

6     time, that these possible charges could carry -- a

7     murder charge carries up to life, sir, as you well

8     know, and the armed robbery charge, sir, carries ten to

9     thirty years.  Do you understand that, sir?

10        MR. BROWN:  Yes, ma'am.

11        THE COURT:  Sir, additionally, these charges are

12     both deemed most serious and violent offenses.  What

13     that means, sir, is that if you are convicted of

14     another most serious offense, you will be looking at

15     life without parole.  Do you understand that, sir?

16        MR. BROWN:  Yes, ma'am.

17        THE COURT:  And understanding that, sir, do you

18     still wish to plead guilty?

19        MR. BROWN:  Yes, I do.

20        THE COURT:  Sir, additionally, when you plead

21     guilty, you give up important constitutional rights.

22     As you know, we started your trial yesterday, or we

23     pulled a jury in this case yesterday.  Sir, in a jury

24     trial, you have a right to remain silent.  No one can

25     ever make you testify against yourself.  If you chose

MIA PERRON, CCR, CVR-CM                                    -8-

State v. Anthony L. Brown
Plea
3/13/07

1    not to testify in a case, sir, I would instruct a jury

2    of twelve people they couldn't hold it against you.

3    Additionally, sir, at a jury trial you would be

4    presumed innocent until and unless a jury, in fact,

5    found you guilty.  And that is something that is a

6    cloak of innocence that would accompany you from the

7    beginning of the trial -- or actually it started from

8    the beginning of arraignment, through the process,

9    until and unless a jury convicted you.  Do you

10   understand that?

11          MR. BROWN:  Yes, ma'am.

12          THE COURT:  Sir, do you understand that at a

13   jury trial your attorney, Mr. Tootle, would have the

14   opportunity to cross-examine the State's witnesses, as

15   well as present witnesses in your defense?  Sir,

16   additionally, at a jury trial Mr. Tootle would have the

17   opportunity to attempt to suppress possible evidence.

18   It could be statements, it could be a murder weapon, it

19   could be anything, sir, and I don't know the specific

20   facts of your case to tell you whether or not he would

21   be successful.  But, sir, do you understand and

22   appreciate by not having a jury trial you are waiving

23   this right to have this evidence suppressed?

24          MR. BROWN:  Yes, ma'am.

25          THE COURT:  All right, sir.  And I want you to

MIA PERRON, CCR, CVR-CM                                    -9-

FORM C-100 · LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

State v. Anthony L. Brown
Plea
3/13/07

1    fully appreciate and understand that by pleading guilty

2    here today, you are not going to get a jury trial.  Do

3    you understand that?

4         MR. BROWN:  Yes, ma'am.

5         THE COURT:  All right, sir.  And do you

6    understand that you are going to have convictions on

7    your record for both murder and armed robbery?  Do you

8    understand that, sir?

9         MR. BROWN:  Yes, ma'am.

10        THE COURT:  All right, Mr. Brown.  And

11   understanding all that, sir, do you still wish to go

12   forward and plead guilty to these two charges?

13        MR. BROWN:  Yes, I do.

14        THE COURT:  All right.  Solicitor, other than

15   the plea negotiations that you've put on the record, is

16   there anything further, any other charges that are

17   being dismissed, or anything else that needs to be put

18   on the record?

19        MR. ALEXANDER:  No, Your Honor.

20        THE COURT:  Okay.  Is that correct, Mr. Tootle?

21        MR. TOOTLE:  That is correct.

22        THE COURT:  All right.  Sir, are you completely

23   satisfied with how Mr. Tootle has represented you?

24        MR. BROWN:  Yes, I am.

25        THE COURT:  Have you spoken to him for as long

MIA PERRON, CCR, CVR-CM                                    -10-

State v. Anthony L. Brown
Plea
3/13/07

1      and as often as is necessary to defend you in this

2      matter?

3              MR. BROWN:  Yes, ma'am.

4              THE COURT:  Have you understood all your

5      conversations with him?

6              MR. BROWN:  Yes, I have.

7              THE COURT:  Sir, do you need any additional time

8      to talk with Mr. Tootle right now before I accept your

9      plea and sentence you, sir?

10             MR. BROWN:  No, ma'am.

11             THE COURT:  Do you have any complaints

12     whatsoever against Mr. Tootle?

13             MR. BROWN:  No, ma'am.

14             THE COURT:  Sir, has anyone promised you

15     anything or held out any hope of reward to get you to

16     plead guilty?

17             MR. BROWN:  [Indicates negatively]

18             THE COURT:  Sir, has anyone pressured you,

19     threatened you, or told you you had to plead guilty

20     here today?

21             MR. BROWN:  No.

22             THE COURT:  Sir, has anyone mistreated you from

23     law enforcement or the solicitor's office regarding

24     these charges?

25             MR. BROWN:  No.

MIA PERRON, CCR, CVR-CM                                    -11-

State v. Anthony L. Brown
Plea
3/13/07

1    THE COURT:  Sir, have you understood all of my

2    questions?

3    MR. BROWN:  Yes, I do.

4    THE COURT:  Mr. Brown, have you been truthful in

5    your responses to the Court?

6    MR. BROWN:  Yes, I have.

7    THE COURT:  Sir, you have the right to appeal

8    this guilty plea and any sentence this Court gives you,

9    but you must do so within ten days of today's date.  If

10   you can't afford an attorney for an appeal, one will be

11   appointed for you at no cost to you.  Do you understand

12   that, sir?

13   MR. BROWN:  Yes, ma'am.

14   THE COURT:  All right, sir.  I'm going to have

15   the solicitor give the facts of the case.

16   MR. ALEXANDER:  Please the Court.  Your Honor,

17   on April the 13th of 2004, a little before noon, Carol

18   Maple went to the office of Maloney Concrete, which is

19   located on the frontage road called ███████ Road right

20   out at Exit 54.  It's right on the Interstate in

21   Colleton County.  She had gone by there that morning

22   and dropped her mother off and her two children.  She

23   had a twenty-month-old and a five-month-old, M███████

24   [phonetic], who -- I've got the other child's name.

25   But the grandmother was watching them in the office of

MIA PERRON, CCR, CVR-CM

-12-

State v. Anthony L. Brown
Plea
3/13/07

1    Maloney Concrete.

2          She was using her mother's car to run some

3    errands.  She left there.  Mr. Maloney had left home,

4    William Maloney, who owns the concrete company and is

5    married to Carolyn Maloney.  He had left home and gone

6    to Rose Oil and to Car Quest for some auto parts.  It

7    was raining that day, and they weren't working.  They

8    also had a funeral to go to that afternoon.

9          He went by the shop, saw his wife around 9:00,

10   9:30, and the grandchildren, and then he went on home

11   and was working on his truck.  He got a call from his

12   wife on his cell phone around 10:30, 10:00 to 10:30.

13   And the daughter called her mother regarding lunch

14   about 11:11 and received no answer at the concrete

15   company.  She went ahead and bought lunch and went to

16   the office, and when she came in the door she found her

17   mother slumped over in the chair where there was a

18   great deal of blood.  Her children were covered in

19   blood.  She called 911.  They gave her instructions

20   about how to administer CPR.  She was unable to move

21   her mother, and while she was doing this, fire and

22   rescue arrived, and law enforcement.  And the coroner's

23   office came, and she was pronounced dead.

24         She was autopsied by Dr. Presnell at MUSC, and

25   the cause of her death was a gunshot wound that entered

MIA PERRON, CCR, CVR-CM                                    -13-

State v. Anthony L. Brown
Plea
3/13/07

1    her right temple and exited below her left ear.  A

2    bullet casing and the bullet projectile were recovered

3    at the scene, and analyzed by SLED, and determined to

4    be .380 caliber.

5         One of the things found at the scene by the SLED

6    forensic team were footprints along the roadway.  And

7    they were of a small size.  And known to local law

8    enforcement was an individual by the name of April

9    Hampton.  April Hampton was contacted at her mother's

10   home and there, with the mother's consent, they

11   recovered a pair of Niki shoes that matched the pattern

12   in the road.

13        Initially, April Hampton denied any knowledge

14   of -- denied they were her shoes, claimed they were her

15   sister's, and denied any knowledge.  Later she admitted

16   that they were her shoes and she had worn them that

17   day, and she began cooperating with law enforcement.

18   This was around April the 22nd.  On April the 28th,

19   four individuals were under arrest:  April Hampton; a

20   Ray Nelson; Anthony Terez Brown; and the defendant,

21   Anthony Lamar Brown.

22        Prior to exercising his right to counsel,

23   Anthony Terez Brown assisted police in recovering a

24   .380 pistol.  This pistol was submitted to SLED, and

25   it, along with the casings -- casing and bullet

MIA PERRON, CCR, CVR-CM                              -14-

State v. Anthony L. Brown
Plea
3/13/07

1    projectile were analyzed by Agent Defreeze at SLED and

2    it was determined that that was the weapon that had

3    been utilized to shoot Ms. Maloney.  The story came out

4    that this weapon had been provided by Anthony Terez

5    Brown.  This was a stolen weapon, had been reported

6    stolen roughly a year earlier out of Mullins, South

7    Carolina.  We had an ATF report.  Anthony Terez Brown

8    said he purchased it on the street in Florence, and he

9    said that this is the gun that he provided to Anthony

10   Lamar Brown.

11        The four individuals:  Ray Nelson was the

12   driver.  He had a car, a Nissen Pulsar, which they

13   matched the tire treads on and all.  They went to the

14   concrete plant.  Originally it was said that Anthony

15   Lamar Brown, the defendant, also known as Banks, was

16   going to pick up a paycheck, that he had formerly

17   worked there.  He -- the two Browns, Anthony Terez

18   Brown and Anthony Lamar Brown, went into the office.

19   Punky, also known as April Hampton, was on the roadway

20   as a lookout, and Ray Nelson was in the car.

21        They went in.  Anthony Terez Brown exited with a

22   diaper bag and Ms. Maloney's purse.  Mr. Anthony Lamar

23   Brown exited with some type of money bag.  They rode

24   around.  Ultimately, the bag was disposed of in a drain

25   over near the stadium.  Ray Nelson was told to hide the

MIA PERRON, CCR, CVR-CM                                    -15-

State v. Anthony L. Brown
Plea
3/13/07

1    purse and the diaper bag, and it was done down in Green

2    Point [phonetic] area.  He assisted officers in

3    recovering that; and still had identifications of

4    Carolyn Maloney in it.

5         The other two defendants also indicated Anthony

6    Lamar Brown carried the murder weapon into the place of

7    business.  One of them indicated they heard the shot.

8    Anthony Terez Brown indicated he left first and he also

9    heard a shot.  This -- that was how far the case had

10   progressed up until about April the 28th.  Finally got

11   all the SLED information and all back.  And Ray Nelson

12   and April Hampton were cooperating.

13        Anthony Terez Brown exercised his rights of

14   counsel.  He had asked to talk with me way back then,

15   and when he exercised his right to counsel I ceased

16   conversation with him.  And then he went through a

17   series of lawyers.  And when he finally was represented

18   by Mr. James Wegman, who is present in court, Mr.

19   Wegman came to me.  There were some irregularities in

20   some of the things concerning Anthony Terez Brown, so

21   I'm -- for his truthful testimony, I agreed to allow

22   him to plead straight up to armed robbery and to

23   dismiss the murder charge.  So with that, I conversed

24   with him and he agreed to testify.  We were prepared to

25   utilize him in the trial of the case, and I'm prepared

MIA PERRON, CCR, CVR-CM                                    -16-

FORM C-100 - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

State v. Anthony L. Brown
Plea
3/13/07

1    to honor that plea agreement.

2           The only agreement with the other two defendants

3    was that I would give their consideration.  They were

4    still looking at the murder and armed robbery charges.

5    I've told their attorneys that I believe in treating

6    people as to their culpability.  And it is my honest

7    belief that these three other codefendants did not

8    realize that the life was going to be taken.  I've

9    emphasized to them what a dangerous adventure this was

10   because whenever you deal with this type of felony, the

11   law treats it as a logical consequence when death

12   ensues.

13          But because I've discussed all the pros and cons

14   with the family, Mr. Maloney, his daughter Carol, and

15   other members of the family are here, and I made them

16   aware of my offer for a negotiated sentence last week,

17   and they were in agreement.  I spoke specifically with

18   Mr. Maloney.  Then he contacted me and told me he had

19   talked with his children.  I believe this is the best

20   disposition of the case.

21          Mr. Brown has a juvenile conviction that I

22   didn't really take into consideration in the case.  But

23   other than that -- because I think he's only twenty-

24   something years old now.  That's all.

25          THE COURT:  Solicitor, do any of the victims

MIA PERRON, CCR, CVR-CM                                    -17-

State v. Anthony L. Brown
Plea
3/13/07

1    want to speak, sir, or the victim's family?

2        MR. ALEXANDER:  Anyone wish to address the

3    Court?  Any of the family.

4        THE COURT:  All right.

5        MR. ALEXANDER:  I mean, as I said to Mr.

6    Maloney, and I told the family, I did not want them to

7    think in any way that I was belittling the life of a

8    fifty-four-year-old mother and grandmother and wife.

9    And I just felt like it was -- I didn't want to have to

10    put the daughter back through what she observed, I

11    didn't want to have to put Mr. Maloney through -- he

12    suffered a lot, because when they started out, he was

13    treated as a suspect, and, you know -- and that upset

14    him.  And I've explained all of that, that law

15    enforcement was doing their job.  And I believe this is

16    the best resolution of the matter.

17        THE COURT:  All right.

18        MR. ALEXANDER:  Thank you, Your Honor.

19        THE COURT:  It's my understanding, Mr.

20    Alexander, the two children were not harmed; is that

21    correct?

22        MR. ALEXANDER:  Well, not physically harmed,

23    Your Honor.  I think we're still waiting to be seen how

24    they're doing mentally.  Right, Ms. Maple?

25        MS. MAPLE:  Right.

MIA PERRON, CCR, CVR-CM              -18-

State v. Anthony L. Brown
Plea
3/13/07

1    THE COURT: And it's a twenty-month-old. And

2    what was the other age of the child?

3    MR. ALEXANDER: Five months.

4    MS. MAPLE: Almost four months.

5    MR. ALEXANDER: Almost four months. Excuse me.

6    THE COURT: Four months. Okay. An almost four

7    months, and twenty-month-old. But they physically were

8    not harmed in any way?

9    MR. ALEXANDER: No, ma'am. And that was the

10    concern. Because they had so much of the grandmother's

11    blood on them, the officers immediately got EMS and all

12    the -- you know, after they had checked Ms. Maloney and

13    she -- they ran an EKG there, it was flatline, and her

14    carotid and wrist pulse were checked by Lieutenant

15    Stallings [phonetic], and no pulse was found when they

16    arrived. And as I said, that was around 11:55 to noon.

17    And we feel like she was shot before 11:00.

18    THE COURT: All right. Thank you, solicitor.

19    Mr. Brown, sir, do you willingly admit that Ms.

20    Maloney was, in fact, killed; is that correct?

21    MR. BROWN: Yes, ma'am.

22    THE COURT: All right, sir. And y'all had gone

23    in there to steal money? Was that the purpose?

24    MR. BROWN: Yes, ma'am.

25    THE COURT: And, in fact, did you shoot her?

MIA PERRON, CCR, CVR-CM                                      -19-

State v. Anthony L. Brown
Plea
3/13/07

1            MR. BROWN:  No, I didn't.

2            THE COURT:  Okay.  Did someone else that was

3      with you there shoot her?

4            MR. BROWN:  Yes, it was.

5            THE COURT:  Okay.  Who was that, sir?

6            MR. BROWN:  It was Terez Brown.

7            THE COURT:  Mr. Tootle, have you explained to

8      him the hand of one is the hand of all, and have y'all

9      discussed this?

10            MR. TOOTLE:  Yes, Your Honor, we've discussed

11      that.

12            THE COURT:  Okay.  Could I have both attorneys

13      come forward just for a moment, please.

14            [Whereupon, a bench conference is held]

15            THE COURT:  Mr. Tootle?

16            MR. TOOTLE:  Your Honor, I listened very

17      carefully to the solicitor's comments and they are, in

18      fact, one pretty accurate version of what occurred.  I

19      don't think there's any doubt that there was four

20      people that were involved in much more than mischief.

21      I don't think that there was any doubt that April

22      Hampton and Ray Nelson misunderstood what was happening

23      at all.  There is some significant evidence that shows

24      that April Hampton was instrumental in obtaining the

25      gun from Terez Brown; that actually there is some

MIA PERRON, CCR, CVR-CM                              -20-

State v. Anthony L. Brown
Plea
3/13/07

1    evidence that may lead to believe that there was more

2    than one gun involved, that there were actually two

3    guns involved.

4         Lamar Brown, my client, the defendant who is

5    pleading guilty, readily acknowledges that he went into

6    the cement company for the purpose of robbing that

7    company; that he did, in fact, have in his possession a

8    pistol with which to rob that company.  It's his story

9    that -- and his belief that Terez Brown likewise had a

10   pistol with him and that Terez Brown's pistol was the

11   one that was used by Terez Brown to kill Ms. Maloney.

12        I've been in this case for almost three years,

13   Judge, and through that time Lamar Brown and I have

14   discussed many, many, many times the concept that if

15   you have -- if you have more than one person involved

16   in a crime, that the hand of one is the hand of all;

17   that if any one person was to shoot and kill a woman in

18   a situation like this, that all four are charged with

19   murder; and that under the law all four could be

20   convicted of murder, and, actually, first degree

21   murder.

22        Mr. Brown fully understands that.  The reason

23   that he's here today is because he understands that.

24   If he did not understand that, we would be going to

25   trial.  But he tells me, Judge, that he understands the

MIA PERRON, CCR, CVR-CM                                    -21-

State v. Anthony L. Brown
Plea
3/13/07

1    hand of one is the hand of all and that as a result,

2    he's here before the Court.

3            THE COURT:  Thank you, Mr. Tootle.  Anything

4    else you would like to tell me, sir?

5            MR. TOOTLE:  Judge, he's not had a -- although

6    he appears to be a reasonably healthy young man, he was

7    from some tragic circumstances.  His mother is a

8    resident of New York.  His father has not been around

9    for many, many years.  He was raised by wonderful and

10   loving grandparents of the Reverend and Ms. Walters,

11   Madison Walters, who have been close with me throughout

12   this case; and they're close with their grandson; and

13   actually he calls his granddaddy Daddy.  So from the

14   time he was three years old, he was raised by his

15   grandfather and his grandmother, who desperately love

16   him and are trying their best to get him on the right

17   path, Judge.

18            This has torn up many families.  This has not

19   only torn up the Maloney family.  This has torn up the

20   Walters family.  I'm convinced it's torn up the Brown

21   family, and the other families involved in this, also.

22   A very, very tragic case, Judge.  I don't know of any

23   case that I've ever handled that is more tragic than

24   this, nor that had more different stories and lines to

25   it.

MIA PERRON, CCR, CVR-CM                              -22-

State v. Anthony L. Brown
Plea
3/13/07

1          I think that the negotiated plea is fair.  Under

2      the circumstances, I think it's fair.  I have talked to

3      Lamar Brown about this plea for quite some time now,

4      and he believes it to be fair under the circumstances.

5      And we ask the Judge to consider it carefully and

6      approve the negotiated plea and adopt it.

7          We would also request that the Court grant him

8      time served.  He went into jail -- he was arrested for

9      this offense and went into jail on April the 28th of

10     2004.

11         THE COURT:  All right, sir.

12         Mr. Brown, is there anything you would like to

13     say, sir?

14         MR. BROWN:  No.

15         THE COURT:  Anything further from anyone?

16         MR. ALEXANDER:  No, Your Honor.

17         THE COURT:  I do find a substantial factual

18     basis for this plea, that your decision to plead

19     guilty, Mr. Brown, is freely, voluntarily,

20     intelligently, knowingly, and with consent of competent

21     counsel with whom you tell me you're satisfied, sir,

22     and I will accept your plea.  Additionally, sir, I will

23     accept the negotiated sentence as negotiated between

24     your attorney and the solicitor.

25         On indictment number 2004-GS-15-420 -- it's for

MIA PERRON, CCR, CVR-CM                          -23-

State v. Anthony L. Brown
Plea
3/13/07

1    murder -- the sentence of this Court is that you be

2    committed to the Department of Corrections, sir, for a

3    period of forty years.  On indictment number 2004-GS-

4    15-421 -- that is an indictment for armed robbery --

5    the sentence of this Court is that you be committed to

6    the Department of Corrections for a period of thirty

7    years.  Those two sentences are to run concurrent to

8    each other, sir, and you are to be given credit for the

9    time you have served from April 28th of 2004 until

10   present.  Good luck to you, Mr. Brown.

11              [PLEA CONCLUDES AT 10:25 A.M.]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MIA PERRON, CCR, CVR-CM                              -24-

State v. Anthony L. Brown
Plea
3/13/07

C E R T I F I C A T E

STATE OF SOUTH CAROLINA

COUNTY OF COLLETON

I, the undersigned Mia Perron, Official Court Reporter for the 14th Judicial Circuit of the State of South Carolina, do hereby certify that the foregoing is a true, accurate, and complete transcript of the plea of Anthony L. Brown, held before the Honorable Carmen T. Mullen, on March 13, 2007.

I do further certify that I am neither kin nor counsel to any of the parties and have no interest in the outcome of this action.

Dated this 18th day of May, 2007.

Mia Perron, CCR, CVR-CM
Circuit Court Reporter
9th Judicial Circuit

MIA PERRON, CCR, CVR-CM                                    -25-

**WITNESSES**

Det. Hampton Jenkins

SSgt. Lesley Jamison

---

**ARREST WARRANT #:**

G308170

Arrested on May 12, 2004

---

**ACTION OF GRAND JURY**

*True Bill*

Foreman: ████████████
Grand Jury
████████████

**VERDICT**

Foreman: _____
Petit Jury
Date: _____

---

DOCKET #: 04GS15-0420

**THE STATE OF SOUTH CAROLINA**
County of Colleton

████████████████

**COURT OF GENERAL SESSIONS**

Term: July, 2004

**THE STATE**

vs.

Anthony L. Brown

████████████████

**INDICTMENT FOR**

0116

**MURDER**

16-3-20

STATE OF SOUTH CAROLINA )
                        )   INDICTMENT #04GS15-0420
County of Colleton      )

At a Court of General Sessions, convened on July 19, 2004, the Grand Jurors of Colleton County present upon their oath:

COUNT:                      MURDER
                            16-3-20

That Anthony L. Brown did in Colleton County on or about April 13, 2004, feloniously, wilfully and with malice aforethought, kill one Carolyn Maloney by means of shooting her and that the said Carolyn Maloney did die in Colleton County as a proximate result thereof on or about the 13th day of April, 2004.

Against the peace and dignity of the State, and contrary to the statute in such case made and provided.

SOLICITOR _____

2007 04/03 17:34 FAX

WITNESSES

Det. Hampton Jenkins

SSgt. Lesley Jamison

ARREST WARRANT #:

G308171

Arrested on May 12, 2004

ACTION OF GRAND JURY

*True Bill*

Foreman: ▓▓▓▓▓▓▓▓▓▓
Grand Jury

VERDICT

Foreman:
Petit Jury
Date:

---

DOCKET #: 04GS15-0421

THE STATE OF SOUTH CAROLINA
County of Colleton

COURT OF GENERAL SESSIONS

Term: July, 2004

THE STATE

vs.

Anthony L. Brown

INDICTMENT FOR

0139

ARMED ROBBERY

(16-11-330)

STATE OF SOUTH CAROLINA  )
                         )    **INDICTMENT #04GS15-0421**
County of Colleton       )

At a Court of General Sessions, convened on July 19, 2004,
the Grand Jurors of Colleton County present upon their oath:

COUNT:              ARMED ROBBERY
                    (16-11-330)

That Anthony L. Brown did in Colleton County on or about April 13, 2004,
while armed with a deadly weapon, or while alleging or representing, by action
or words, that he/she was armed with a deadly weapon, or other object that a
person present, reasonably believed to be a deadly weapon, to wit: a handgun,
feloniously take from the person or presence of the victim, Carolyn Maloney, by
means of force or intimidation goods or monies of said victim, such goods or
monies being described as follows: *purse, bank bag, diaper bag ( VMc )*

Against the peace and dignity of the State, and contrary to the statute
in such case made and provided.

SOLICITOR _Randolph Murdaugh_